Bruce Robertson, an Infant, by Louisa M. Robertson, His Guardian ad Litem, Appellant, *v.* Rockland Light and Power Company and New York Telephone Company, Respondents.

First Department, May 5, 1919.

**Electricity — negligence — injury to infant from electric shock and fall while climbing poles of electric power company and of telephone company maintained close together, with steps near the ground — contributory negligence in climbing poles — nuisance — common-law duty of power company to maintain poles and wires — defective insulation — actual knowledge of defects or constructive notice — questions for jury.**

In an action against an electric power company and a telephone company to recover for personal injuries, it appeared that each of the defendants maintained a pole for carrying its wires on the side of the highway in the vicinity of a school which plaintiff was attending; that plaintiff and a schoolmate were climbing said poles endeavoring to see who could climb the fastest or highest, and plaintiff, a boy about eleven years of age, received through his left hand a current of electricity from a live wire maintained by the power company and was burned and precipitated to the ground, a distance of twenty or twenty-five feet; that upon each of the poles, which were so close together that boys could climb from one to the other, steps were maintained near the ground; that plaintiff testified that he climbed the telephone pole a distance of eight or ten feet until he was above another boy, and then climbed across onto the power company's pole and continued up it until injured, and that about a month before the accident the proprietor of the school had warned the boys not to climb the poles but *not* that the wires were dangerous.

*Held,* that under the circumstances a judgment dismissing the complaint cannot be sustained on the theory that as matter of law the plaintiff was guilty of contributory negligence in climbing the poles;

That no negligence on the part of the telephone company was shown;

That since the power company was duly authorized to erect and maintain poles and wires for the express purpose of transmitting high voltage electric current, and since it is not shown either that it was customary or practical so to insulate the wires as to prevent the escape therefrom of the current, it cannot be said to have maintained a nuisance. Said power company, however, in the exercise of this lawful right owed a common-law duty to the public in constructing and maintaining the poles and wires, to exercise care commensurate with the danger to be apprehended.

The evidence does not establish that the power company had actual knowledge of the alleged defects in the insulation or that they had existed

sufficiently long to charge it with constructive notice, nor does it tend
to show that but for such defective insulation the accident would not
have happened.

Under the circumstances it should have been submitted to the jury to
determine whether the power company was guilty of negligence in main-
taining the steps on its pole so near the ground, and in not properly
insulating its wires.

CLARKE, P. J., dissented in part.

APPEAL by the plaintiff, Bruce Robertson, from a judgment
of the Supreme Court in favor of the defendants, entered in
the office of the clerk of the county of New York on the 30th
day of January, 1917, upon a dismissal of the complaint by
direction of the court at the close of plaintiff's case.

*Easton S. Bacon* of counsel [*Robinson, Bacon, Gutterson &
Biglow*, attorneys], for the appellant.

*E. C. Sherwood* of counsel [*Clarence S. Zipp* with him on
the brief; *Amos H. Stephens*, attorney], for the respondent
Rockland Light and Power Company.

*Alexander Cameron* of counsel [*Arnold W. Sherman* and
*Howard I. Morris* with him on the brief; *Charles T. Russell*,
attorney], for the respondent New York Telephone Company.

LAUGHLIN, J.:

Each of the defendants maintains a pole for carrying its
wires on the side of the public highway known as South
Broadway, in the vicinity of Berkeley Academy, which plaintiff
was attending, near the village of South Nyack, in the county
of Rockland. On the 12th day of July, 1912, the plaintiff
and a schoolmate were climbing these poles, evidently endeavor-
ing to see who could climb fastest or highest, and the plaintiff
received, through his left hand, a current of electricity which
must have come from a live wire maintained by the defendant
Rockland Light and Power Company, which for brevity will be
referred to as the power company, on its pole or from a
transformer box attached to the pole above the lowest crossarm,
and was burned and precipitated to the ground, a distance of
twenty or twenty-five feet, and sustained injuries, both from
the electric current and the fall, to recover for which he

brought this action against both companies. There were upon each of the poles steps, about five inches in width, consisting of wooden cleats nailed to the poles commencing near the ground and extending up on each side of the pole about eight or nine feet therefrom, from which point on up to near the top of the pole there were steps consisting of large iron spikes driven into the pole, evidently designed to enable the linemen of the respondents to climb up and examine and repair the wires suspended from the poles near the top and their attachments. The lowest step on the telephone pole was thirty-seven and one-half inches from the ground, and that on the power company's pole about two feet from the ground; and the steps on the telephone pole were about thirty-two and one-half inches apart and those on the power company's pole were less than two feet apart, as it appears that those *on each side* were from thirty-nine and one-half to forty-two inches apart. Negligence is predicated against both companies for maintaining the poles so close together, their distance apart being, at the ground, twenty-seven and three-fourths inches, between eleven and twelve feet up thirty-three inches, and at nineteen feet up four feet six inches; and in having these steps on them by which it is claimed the boys were invited or enticed to climb them. Negligence is predicated against the power company on the further ground that its wires, charged with a very heavy current of electricity, were not properly insulated, and that the insulation had become worn and defective. The right of the companies to erect and maintain the poles in the highway was not challenged, and, therefore, it must be presumed that they had lawfully acquired the right to erect and maintain their poles and wires thereon. It appears that the power company's line was erected in 1899, and that it had been maintained from that time on; and that the power company had a franchise from the local authorities approved by the Public Service Commission, so to use the highway, and that it had also acquired from the abutting owners the right to erect and maintain its poles, and that it had a street lighting contract with the municipal authorities which required the erection and the maintenance of the poles. It was stipulated that the telephone company's line was erected in 1907.

The plaintiff testified that at the time of the accident he had been attending the Berkeley Academy about eight months, and was then a little over eleven years and two months old; that the boys played baseball and tag and climbed trees nearly all of the time; that just before the accident he was by the side of the road watching three boys who were climbing the pole; that he got up and went over to them and one of them said to him, " Lets see who will go the highest," and that the other boy started to climb the power company's pole, and that he climbed the telephone pole, a distance of eight or ten feet, until he was above the other boy and then climbed across onto the power company's pole and continued up it; that after he got up quite a distance he reached up with his left hand to get another hold, and at the same time looked down to see where the other boy was, and that " then I didn't know anything after that; " that he remained unconscious for three hours, and when he came to he found that his left hand and arm were burned, and that he was bleeding, and that two of his fingers were so burned that they broke off and that the tip came off of a third finger; that he had seen boys climbing the pole three or four times before but that was the first time he had climbed it, and that three months after the accident the wire he *touched* was pointed out to him and he saw a break in it near the pole. On cross-examination he testified in substance that about a month before the accident Mr. Christie, the proprietor of the school, warned the boys in general to stay out of the highway and not to climb the poles for the reason that they might fall and hurt themselves, but *not* that the wires were dangerous; and that at the time he climbed the pole he thought nothing of Mr. Christie's warning and had forgotten it, and that seeing the other boys playing there he did the same; that he did not remember whether he climbed as high as or beyond the first crossarm; that as he was climbing he noticed the transformer box and that he was near it when he reached up the last time; and that there was no tree in the vicinity of the poles.

Mr. Christie, the principal of the Berkeley Academy, testified that the academy was established there as a boarding school for boys on the 15th day of September, 1910; that the average attendance at the school was twenty; that at the

time of the accident about half of the boys were sixteen years of age or over, about five or six under twelve, and about the same number between twelve and sixteen, and that some were as young as seven, and that the ages of the boys would average about sixteen years; that the school grounds extended on both sides of the highway, and that on the opposite side of the highway from the school, on which were the poles, there was a small orchard and a wooded lot, all of which were included in the playground; that on one occasion, in April, prior to the accident he observed one of the boys starting to climb the power company's pole, and that he then ascertained that two or three boys had climbed some distance up the pole during the month before that; that he reproved the boy, and warned the other boys who were with him against climbing the poles, and against the danger of playing with wires wherever found, and at dinner that evening, the plaintiff being present, he took occasion to bring the matter to the attention of all the boys and warned them of the dangers of coming in contact with live wires, and that he attracted the attention of all the boys and knew that they all listened to what he said; that between the school and the village he had seen boys climbing the power company's poles six or seven times, and that in one such instance the pole did not have steps, and that he did not bring it to the attention of the power company that boys were climbing the poles.

The general manager of the power company testified that when he assumed office on November 11, 1912, after the accident, the poles and wires were in the same condition as they thereafter remained and as they are shown by the photographs introduced in evidence; that the iron steps commenced eight or nine feet from the ground; that the power company's pole had four crossbars near the top, carrying eight wires, four on the upper arm, carrying currents of 3,300 volts; that the third arm from the top, known as the " buck arm," was placed there for service purposes and carried two wires of 110 voltage, and that the lowest arm carried two street lighting wires for transmitting the current to the Berkeley Academy for electric lighting, and that the voltage carried by these wires was probably 2,000; that the wires were insulated and that no change had been made in the insulation since he became

manager; that the company used two kinds of insulation, one known as " rubber covered insulated wire," and the other as " weatherproof insulated wire," but that he did not know which kind was used on these wires; that the insulation is about one-eighth of an inch in thickness; that no insulation is totally reliable to prevent shock to one coming in contact with it; that the insulation is good but not a guaranteed protection, and that its purpose is " principally to pacify the dear public; " that it is impossible to insulate wires so as to render it safe to touch them; that the insulation was maintained in good condition during his term of office; that the premises, known at the time of the accident as the Berkeley Academy, had been given electric light service by the power company since the 29th of November, 1904.

Christie also testified that after the accident he noticed that the electric light wires were insulated with some kind of cloth charged with rubber, and that he noticed " that some of these wires showed ragged, the cloth is burst up turned in, many places on that wire; " that a day or two after the accident and after the plaintiff had regained consciousness he said to the plaintiff " that his injuries were the result of his not heeding my warning; " and that he could not say that the plaintiff made any reply and that when he made such remarks the plaintiff " would answer with a smile or something of that sort." He also testified that he only observed the condition of the wires from the ground but that their ends were turned over, and that they looked ragged with the corners turned up.

One Kouehn testified that the insulation on those wires is what is known as " weatherproof " insulation, and appeared to be the same as is universally used by electric light companies, but that weatherproof insulation is no protection if contact is made with it under such conditions as to set up a circuit, and that to create a circuit it would be necessary also to come in contact with another conductor, and that the use of insulation is being abandoned and bare wires are being used now.

The plaintiff's aunt testified that she looked at the wires on this pole the next day after the accident and that " one of them had a distinct crack, and the others were ragged looking."

One O'Donovan testified that with respect to the Garden City Development Company's electric light wires there were steps on all transformer poles commencing about nine feet from the ground, and that it is the accepted practice to " step " transformer poles, commencing from eight to ten feet above the ground, and that on a certain private estate on Long Island there were no steps on the poles of a lighting extension line.

One Greiff testified that he was an electrical engineer and familiar with the construction of electric light poles and wires at and prior to the time of the accident, and that practically all high tension wires below 3,300 volts were covered with weatherproof insulation but that some were bare and that it was customary to leave the higher tension wires bare; that proper construction required that the high tension wires should be made inaccessible " to an average person without tools or instruments; " that they should be securely constructed to prevent falling, and that precaution should be exercised to prevent trees from falling on them; that one precaution to be exercised is to keep the lowest step on the pole out of reach of the average person; that linemen can and do use climbers, consisting of a spike fastened to a strap on the lineman's leg, but that with respect to transformer poles where there is usually much work required to be done, it is customary to provide the lineman with more security than could be obtained from climbers alone, and that for this purpose it is customary to step the poles down from the top to a point which he can reach by climbers or by being boosted by his helper, or by a practice largely followed, which is for the lineman to drive a spike into the pole temporarily to enable him to climb it and to pull out the spike on coming down; that there are also forms of sockets or removable steps in use, and that short ladders are also used, and that the practice of the Edison Company was to have the steps commence upwards of eight feet above the ground.

The plaintiff read in evidence the power company's report of this accident to the Public Service Commission in which it was stated that the plaintiff and two other boys were climbing the pole and touched " electric light wires to see if

they were alive " which resulted in an electric shock and further injury to the plaintiff through falling, and that it could not suggest any practical method of guarding against · such an accident.    With the exception of the children attending this school, probably there were not many children residing in the vicinity, for it appears that there were only from six to eight houses within half a mile.

Considering the plaintiff's age, the circumstances under which he was attracted to the poles and came to climb them and his testimony concerning his understanding of the warning given by the principal of the school a month or more before, and that he did not have it in mind at the time — the judgment cannot be sustained on the theory that as matter of law he was guilty of contributory negligence in climbing these poles, which were so equipped with steps for climbing them and stood on the side of the highway between the school playgrounds, unguarded by fence or otherwise, and with no notice of warning of danger thereon or attached thereto.

I am of opinion, however, that no negligence on the part of the telephone company was shown.    The injuries to the plaintiff did not result from contact with any of its wires and they did not carry a dangerous current of electricity. The exercise of reasonable care did not require it to foresee that boys would engage in such a climbing contest on these poles and that one starting on its pole might cross over to the other pole and come in contact with a highly charged wire thereon, to his injury.    (See *Johnson* v. *City of New York*, 208 N. Y. 77; *McCloskey* v. *Buckley*, 223 id. 187; *Hall* v. *New York Telephone Co.*, 214 id. 49; *Fitzgerald* v. *Rodgers*, 58 App. Div. 298.)

The position of the power company is quite different, for it thus maintained this pole and wires in the public highway adjacent to this boys' school and between the playgrounds of boys who from natural impulse are prone to climb, with these steps unnecessarily permanently attached to the pole leading directly from the ground to its live wires, which were insufficiently insulated to prevent the escape of the electric current to such an extent as to cause injury should contact be made therewith in such manner as to produce a circuit.    It is not claimed that the power company omitted

any statutory duty. Liability is claimed against it on the grounds of nuisance and negligence. I think it may not be said that it maintained a nuisance for it was duly authorized to erect and maintain the poles and wires for the express purpose of transmitting through the wires this high voltage electric current; and the evidence does not show either that it was customary or practicable so to insulate the wires as to prevent the escape therefrom of the. electric current. (See *Hickok* v. *Auburn L., H. & P. Co.*, 200 N. Y. 464; *Beetz* v. *City of Brooklyn*, 10 App. Div. 383.) It, however, in exercising this lawful right owed a common-law duty to the public in constructing and maintaining the poles and wires to exercise care commensurate with the danger to be apprehended. The evidence tending to show a general custom not to place steps on the poles accessible from the ground indicates apprehension, at least, that if continued to the ground, children or others might be attracted thereto and might use the steps and come in contact with the current. The decision of the appeal, as I view it, rests on whether it may be held on this record as matter of law that the power company fully discharged that duty or whether that became a question of fact which should have been submitted to the jury.

Counsel for the power company relies on *Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301) as holding that in this State there is no liability to a trespasser for the maintenance on one's own land of a so-called nuisance attractive to children, such as a turntable, and he argues that the pole was on the private property of his client, and that, therefore, the plaintiff in climbing the pole was a trespasser, and that doctrine exonerates the power company from liability. I think there is a material difference between trespassing upon private premises and using private property left unguarded and unattended either temporarily or permanently in a public highway (See *McAlpin* v. *Powell*, 70 N. Y. 126; *Beck* v. *Carter*, 68 id. 283); and the Court of Appeals has distinctly recognized that the turntable doctrine has not yet been extended to a dangerous appliance in, or a dangerous condition created in, a public street. (See *Johnson* v. *City of New York, supra.*) In *Barr* v. *Green* (210 N. Y. 252) it was held that a recovery might be had on the theory of negligence but not of nuisance,

against one who strung barbed wire on a fence on his own boundary line in violation of law in the vicinity of a school where one of the school children accustomed to trespass and play there was injured by coming in contact therewith. In *Keith* v. *Payne* (164 App. Div. 642) it was held that a recovery might be had by a trespasser or at most a bare licensee, on the theory of negligence in permitting a live wire on defendant's own unfenced right of way to sag to within four feet of the ground. In *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484) the court, citing with approval decisions in other jurisdictions where the rule of liability had been more liberally extended than here, and among others, *Daltry* v. *Media Electric Light, H. & P. Co.* (208 Penn. St. 403), holding defendant liable for defectively insulated wires strung across a lawn, whereby plaintiff, who came onto the lawn from the street to play, was injured, and *Temple* v. *McComb City Electric Light & Power Co.* (89 Miss. 1; 42 So. Rep. 874), holding a complaint good which alleged injuries to plaintiff ten years of age, who climbed a tree where he and other children were accustomed to play and came in contact with a live wire strung by defendant through the branches of the tree, held that where live wires are strung over property by lawful license, the company maintaining them may be held liable to one employed in erecting a building thereon, on the theory that it should have foreseen that a structure might be so erected, and on the ground that it should have guarded against such an accident by proper insulation. That and many other decisions proceed upon the theory that insulation may be maintained to prevent injuries by escaping electricity, and it may, therefore, be that the testimony in this record to the contrary is not correct; but since it is uncontroverted, the judgment cannot be sustained on the theory of negligence with respect to the insulation, and on that point it may be observed that the testimony does not show that the power company had actual knowledge of the defects in the insulation or that they had existed sufficiently long to charge it with constructive notice, nor does it tend to show that but for such defective insulation the accident would not have happened. The case of *Freeman* v. *Brooklyn Heights R. R. Co.* (54 App. Div. 596) is not in point, for there the decision was placed mainly

upon the ground that the wire with which plaintiff came in contact was intended to be a dead wire, and defendant was not shown to be responsible for the fact that at the time of the accident it had in some undisclosed manner become charged with electricity, and the court also held that ordinary care did not require the defendant to foresee that a boy passing along the highway, as was plaintiff, would leave the traveled way and climb an obstructed girder of a bridge and thus come in contact with the wire at an elevation of thirteen feet above the ground and three feet from the girder. It was a public bridge, but it was not in the vicinity of a playground for school children. As tending to show the narrowness of the division between liability and non-liability in such cases, it is to be noted that in quite a similar case the defendant was held liable in Connecticut. (*Nelson* v. *Branford L. & W. Co.,* 75 Conn. 548.)

*Fitzgerald* v. *Rodgers* (58 App. Div. 298) is distinguishable on the ground that the only point there presented for decision was whether a winch which was used in the public street by a contractor in constructing a sewer and left there over night without being so secured that boys could not operate the boom and cable, constituted a nuisance, and the court held that since it was not dangerous if left alone, it was not a nuisance. After construing the complaint as one for nuisance only, the majority of the court observed that the contractor was not bound to foresee that children might be attracted to the winch and, citing *Gay* v. *Essex Electric Street Ry. Co.* (159 Mass. 242) approvingly, held that the doctrine of the *Walsh Case* (*supra*) is applicable to appliances lawfully in a public way. That decision has been cited with approval by the Court of Appeals on the point that such use of the winch should not have been foreseen. (*Hall* v. *New York Telephone Co.,* 214 N. Y. 49, 52.)

It has been held that there is a cause of action where a horse and wagon were left standing unguarded in a public street and a child entered the wagon, as a trespasser in a sense, and was injured through the horse being started by a playmate (*Lynch* v. *Nurdin*, 1 Adol. & El. [N. S.] 29); where a child playing in a tree came in contact with a live wire passing through its branches (*Temple* v. *McComb City Electric*

*Light & Power Co., supra*); where a child climbed a tree and came in contact with a live wire suspended above a public alley (*Sweeten* v. *Pacific Power & Light Co.*, 88 Wash. 679; *Williams* v. *Springfield Gas & Electric Co.*, 274 Mo. 1; 202 S. W. Rep. 1; *Benton* v. *Public Service Corporation*, 165 N. C. 354; 81 S. E. Rep. 448; *Mullen* v. *Wilkes-Barre G. & E. Co.*, 229 Penn. St. 54).

Many other authorities are cited, mostly from other jurisdictions, holding liability where the electric current is transmitted along wires over a public way or place, and over private premises as well, and children have come in contact therewith by climbing trees, fences, buildings and other structures, and holding that those in charge of such wires may be held liable on the ground that they should have foreseen that persons riding on high loads might come in contact therewith. (See *Benton* v. *Public Service Corporation, supra; Temple* v. *McComb City Electric Light & Power Co., supra; Williams* v. *Springfield Gas & Electric Co., supra; City of Shawnee* v. *Cheek*, 41 Okla. 227; 137 Pac. Rep. 724; *Mullen* v. *Wilkes-Barre G. & E. Co., supra; Meyer* v. *Menominee & Marinette L. & T. Co.*, 151 Wis. 279.)

On the facts and authorities cited, I think this is a border case, but I am of opinion that it should have been submitted to the jury to determine, in the circumstances, whether the power company was guilty of negligence in maintaining the steps on its pole so near the ground. Both charges of negligence were, I think, for the jury.

It follows that the judgment as to the power company should be reversed and a new trial granted, with costs to the appellant to abide the event, and as to the other company affirmed, with costs.

SMITH, SHEARN and MERRELL, JJ., concurred; CLARKE, P. J., dissented as to reversal of judgment in favor of Rockland Light and Power Company.

Judgment as to Rockland Light and Power Company reversed and a new trial ordered, with costs to appellant to abide event, and as to New York Telephone Company affirmed, with costs.