HINES v. CONSUMERS' ICE & LIGHT COMPANY.

Opinion delivered May 18, 1925.

1. ELECTRICITY—FAILURE TO INSULATE WIRES—LIABILITY.—Although an electric light company is not required to insulate all of its wires, a telephone lineman having a joint right to use its poles may recover for injuries sustained through failure of the light company to have the wires with which he might reasonably come in contact properly insulated.

2. ELECTRICITY — JOINT USE OF POLES — COMPLAINT.—A complaint which alleges that a joint right to use a pole for transmitting electricity existed between an electric light company and a telephone company, and that by reason of the negligence of the former in failing to insulate its wires properly a servant of the latter company was injured, states a cause of action.

Appeal from Columbia Circuit Court; L. S. Britt, Judge; reversed.

E. A. Upton and Henry Stevens, for appellant.
Chas. L. Neely and McKay & Smith, for appellee.

SMITH, J.   This appeal is from a judgment sustaining a demurrer to a complaint which contained allegations to the following effect: Defendant is a corporation engaged in furnishing electricity to its patrons in the city of Magnolia, and, in doing so, maintains poles upon which wires are fastened in the various streets of the city.

Plaintiff further alleged that on August 30, 1921, he was employed as a lineman, and was engaged in

stringing a telephone wire upon one of defendant's poles upon which one of defendant's primary wires was also strung, and "that, in stringing said wire to tie same into the said pole up which plaintiff had climbed, the same came in contact with defendant's said primary wire while same was being used to supply current to defendant's patrons; that, by reason of defective and improper insulation of defendant's said primary wire, the said telephone wire, upon contact therewith, became heavily charged with electricity, as a result of which plaintiff was severely shocked and burned."

It was further alleged "that, at the time of the injury complained of, he was employed in stringing the said telephone wire and the same was being strung over and tied to defendant company's poles with its knowledge, consent and permission, and in its interest. * * * That the injury complained of was wholly the result of defendant's negligence and wantonness in failing to properly insulate its said primary wire, and to maintain same in a safe condition for those whose duty brought them in proximity thereto; that defendant owed plaintiff the legal duty to maintain said primary wire in a safe condition by proper insulation, but negligently failed to do so, and, by reason of such negligence, plaintiff sustained a serious injury."

A motion was filed to require the plaintiff to make the complaint more specific by alleging in what manner the stringing of the telephone wire on defendant's poles was in the interest of defendant, which motion was overruled. Thereupon defendant filed a demurrer to the complaint, which was sustained, and, as plaintiff stood on his complaint, the cause was dismissed.

The complaint does not allege in what manner the stringing of the telephone wire was in defendant's interest, and this allegation may be treated as a mere conclusion of law; but the complaint does allege that, at the time of plaintiff's injury, he was on defendant's pole with defendant's knowledge, consent and permission, and that he was injured through the negligent failure of

defendant to have its light wire properly insulated. Do these allegations state a cause of action?

It will be observed that the complaint alleges that plaintiff was injured in the discharge of his employment at a place where he then was with the knowledge, consent and permission of defendant.

These allegations, by fair intendment, necessarily mean that defendant knew the service in which plaintiff would be and was engaged at the time of his injury, and, as the case is being considered on the sole question of the sufficiency of the allegations of the complaint to state a cause of action, we need not consider what defenses may be available to the defendant.

We quote from the chapter on Electricity in 20 C. J. the following declarations of law which are applicable to the facts alleged in plaintiff's complaint:

"(Section 39). *Location of Wires and Appliances.* The duty of exercising care extends to every place where persons have a right to be, whether for business, convenience, or pleasure, and extends to those upon the premises of consumers, and it makes no difference that the injury occurred on private property and not in a public highway, if the person or animal injured had a right to be on such private property" (Pages 345, 346).

"(Section 40). * * * *Persons Invited.* Where the person injured was present at the place in question by the express or implied invitation of the owner or occupant, he is neither a trespasser nor a bare licensee, and as to him the general law of negligence imposes the duty of exercising due care to prevent injury. Employees of independent or subcontractors engaged to do work about the premises are there by invitation within this rule" (Pages 348, 353, 354).

"(Section 50). *Joint Use of Poles or Appliances and Joint Negligence.* Where the negligence of one party results in injury, that party is liable, although the negligence of another contributed to the injury. If the same poles are used by several employers to sustain their respective wires, each owes to the employees of the

others the duty to exercise due care not to injure them while lawfully employed about such wires" (Pages 366, 367).

In the chapter on Electricity in 9 R. C. L., at § 19, page 1210, it is said:

"19. *Employees of Other Companies Making Joint Use of Same Structures.* Where two companies are making a joint use of a structure to which the wires of each are attached, each should be under the same obligation to the other as persons having common rights in a place or passageway are to one another, not negligently to place a dangerous substance on the common territory where it may be reasonably anticipated that others having common rights may be injured. Of course the purpose for which the structures are used renders some danger from electrical currents inevitable; but the danger ought to be made as small as practicable by the exercise of reasonable care." See also *Gentzkow* v. *Portland Ry. Co.,* 54 Ore. 114, 135 Am. St. Rep. 821; *Braun* v. *Buffalo General Electric Co.,* 200 N. Y. 484; 34 L. R. A. (N. S.) 1089, 140 Am. St. Rep. 645, 21 Ann. Cas. 370; *Knowlton* v. *Des Moines Edison Light Co.,* 117 Iowa 451, 90 N. W. 818.

One of the leading cases dealing with the obligation of joint users of poles upon which the wires of more than one company are strung is that of *Illingsworth* v. *Boston Electric Light Co.,* 161 Mass. 585, 37 N. E. 778, 25 L. R. A. 552. This case has been frequently cited, as is shown by the extra annotation to this report.

The question at issue was there stated by the Supreme Judicial Court of Massachusetts in the following language: "The question, then, is, when two business corporations or two persons, under some agreement between themselves, use the same structures, owned by one of them, as supports for separate lines of wire used by each for the transmission of dangerous currents of electricity, what is the duty, at common law, which each owes to the other in regard to the care each must take to have its wires in a reasonably safe condition at or near

the structures where the servants of the other have occasion to go in the usual course of business, and where they must come near to, or in contact with, the wires?''

After thus stating the question under consideration, the court proceeded to say:

''Such servants, when so employed, are more than mere licensees, taking advantage, for their own benefit, or that of their employer, of the passive acquiescence of the licensor. If they are licensees at all, the license, until it is revoked, is coupled with an interest. The two corporations or persons have, in a sense, a common interest in the maintenance and use of the structures to which the wires of each are attached, and each, we think, should be under the same obligation to the other as persons having common rights in a place or passageway are under to one another, not negligently to place a dangerous substance on the common territory, where it reasonably may be anticipated that others, having common rights, may be injured by it. The purpose for which the structures are used renders some danger from electrical currents inevitable, but the danger ought to be made as small as is practicable by the exercise of reasonable care. In the absence of any agreement on the subject, other than what is involved in the permission of the owner of the structures to the other to use them in common for the support of electric wires, on paying some compensation, we are of opinion that the duty of the owner of the structures is to exercise reasonable care in seeing that his wires are kept, so far as is practicable, in a safe condition at such places as the servants of the other are expressly or impliedly licensed to go in performing their duties with reference to the wires attached to such structures.''

After thus declaring the law, it was said that there was in that case evidence for the jury that the defendant was negligent in leaving two joints of its wire without insulation, within twelve or fifteen inches of the frame, up which the plaintiff, in the course of his duty, as a person employed in the fire-alarm service of Boston, was required or expected to go.

Another case which we find, in our investigation of the authorities, has been frequently cited, and which is extensively annotated in 45 L. R. A. (N. S.) 303, is that of *Denison Light & Power Co.* v. *Patton,* 105 Tex. 621. There an electric light company knew that an employee of a telephone company had made use of one of the light company's poles to repair the telephone line which overhung the light company's wires at that point, and had not completed the work, and there was reason to believe the workman would return on the following day to complete the repair. The servant of the telephone company was burned while making these repairs, and a judgment in his favor was reversed by the Supreme Court of Texas, but this was done because the injured servant was a mere licensee under the facts of that case.

The court announced principles, however, which are applicable here, and it was there said: "In all such cases the relationship between the parties determines the measure of the duty, and this question must be resolved by ascertaining the relation that existed between Patton and the light company at the time of the injury. Patton was the employee of the telephone company, and, at the time, engaged in a work that was solely for its benefit. To perform that work, he made use of the light company's property in going upon its pole, placing the telephone cable upon a cross-arm attached to it, and suspending his platform beneath the cable in this situation, so as to bring himself in contact with the light company's wires. The dangerous situation was produced by himself, and resulted from the use he made of the light company's property. If Patton had the right to make such use of the property, a relationship was created that imposed upon the light company the duty of exercising care to protect him from injury that might result from turning an electric current on its wires. But, under the settled law of this State, the owner of premises is under no general duty to exercise care to make them safe for the use of others coming thereon without authority, invitation, or allurement" (citing cases ).

It was there also said: "A reasonable belief on Sammon's part (the manager of the light company) that he (the servant) would probably return to this place on the morning in question to resume his work for the telephone company was therefore not sufficient to charge the light company with the duty of exercising care to make its property safe for his prosecution of that work. The owner of a structure of this character is not required to make its legitimate use subservient to that of others who go upon it without authority or invitation, for purposes of their own, as would be the case if he is bound to anticipate the presence of such persons upon his property, and, on that account, is under a duty to use it, not in its ordinary way, but only in such manner as not to injure them. In the use of his property the owner is under a duty to exercise due care for the safety of those rightfully upon the premises; that is, those who are there by authority or invitation, or because of allurement. In our view, the charge (of the trial court to the jury) was erroneous in applying this rule to the light company, regardless of whether the plaintiff, at the time of his injury, was rightfully upon its property, or was making an authorized use of it."

In the notes to the text quoted, the annotator says that "the following cases announce the rule that a company maintaining wires over which a dangerous current of electricity passes upon a pole used jointly by others is bound to know that linemen of the other companies may come in contact with its wires, and must use reasonable care in insulating such wires for their protection. (Citing numerous cases)."

There is involved here no question about the duty of the electric light company to insulate all its wires. The authorities appear to be unanimous in holding that there is no such duty, but the cases do hold, as we understand them, that this duty must be performed, or other sufficient safety methods employed to prevent contact

with wires conveying the current at such places as danger of contact may reasonably be anticipated.

The law is stated in 9 R. C. L. at § 21 of the chapter on Electricity, on page 1213, as follows:

"21. *Insulation at Particular Points or Places.*— It is only reasonable that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business, or pleasure, that is, where they may reasonably be expected to go."

In other words, there is no duty to insulate or to take other precautions to prevent contact except at such places as persons have a right to go and whose presence at these points of contact should reasonably be anticipated.

The defendant company was under no more duty than any other property owner to make its premises safe for a trespasser or a mere licensee. The duty to such persons is to inflict no wanton injury after discovering their presence.

Here we interpret the allegations of the complaint to be that a joint right to the use of the pole in question had been conferred, and, if this is true, plaintiff was neither a trespasser nor a licensee. If a right to the joint use of the pole had been conferred, defendant should have anticipated that this right would be exercised, and that its exercise might bring some employee of the telephone company in contact with the wires carrying the electric light current.

We cannot anticipate what facts may be developed by the testimony upon the trial of the cause on its merits, but, under the allegations of the complaint, we think there is a *prima facie* charge that plaintiff was negligently exposed to a danger from which he should have been protected.

The court was in error therefore in sustaining the demurrer to the complaint, and the cause will be remanded with directions to overrule the demurrer.

McCULLOCH, C. J., (dissenting). The law is well settled that one who goes upon the premises of another, not as an employee or as invitee, but merely as a licensee, takes his license with its concomitant perils, and that the owner owes him no affirmative duty of protestation; the measure of the owner's duty being merely the negative one to do no act to cause injury after the presence of the licensee is discovered. *St. L. I. M. & S. Ry. Co.* v. *Tomlinson*, 69 Ark. 489; *Arkansas & Louisiana Ry. Co.* v. *Sain*, 90 Ark. 278; *St. L. M. & S. Ry. Co.* v. *Pyles*, 114 Ark. 218; *C. R. I. & P. Ry. Co.* v. *Russell*, 136 Ark. 365; *Mitchell* v. *Ozan-Graysonia Lbr. Co.*, 151 Ark. 6; *Knight* v. *Farmers' & Merchants' Gin Co.*, 159 Ark. 423. This rule of law applies to the use of electricity the same as to other dangers—there are no exceptions as to the character of danger.

It devolved on the plaintiff in this case to set forth in his complaint a state of facts which imposed on the defendant the duty to exercise care to protect him from danger, and he has failed to allege any such state of facts. The statement that at the time of plaintiff's injury the wire "was being strung over and tied to defendant company's poles with its knowledge, consent and permission," was not sufficient to show that plaintiff was an employee of defendant. The complaint specifically alleged that plaintiff was an employee of the telephone company when he climbed the poles of defendant to string the wires of his employer. He was therefore not an employee of defendant, and the "consent and permission" by defendant for plaintiff to string the wire over the poles and tie it to the poles did not constitute an invitation to so use the poles. Mere permission amounted to no more than a license. In order for plaintiff to make himself out to be an invitee, he should have stated the facts upon which the relation between him and defendant rested. If there existed a

contract between plaintiff's employer, the telephone company, and defendant whereby the latter, for a consideration, permitted the former to use the poles in stringing telephone wires, then plaintiff was more than a mere licensee. But no such state of facts is set forth in the complaint.

My conclusion is that the demurrer was properly sustained.

Mr. Justice WOOD joins in this dissent.