[Civil No. 3105.  Filed February 16, 1932.]

[8 Pac. (2d) 249.]

SALT RIVER VALLEY WATER USERS' ASSO-CIATION, a Corporation, Appellant, v. JAMES COMPTON, By and Through JAMES W. COMP-TON, His Guardian Ad Litem, Appellee.

492

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Messrs. McNabb & DeCamp, for Appellee.

LOCKWOOD, J.—James Compton, a minor, hereinafter called plaintiff, brought suit by and through James W. Compton, his guardian *ad litem*, against Salt River Valley Water Users' Association, a corporation, hereinafter called defendant, to recover damages alleged to have been incurred by plaintiff through receiving an electric shock from certain high-power transmission lines belonging to defendant. A general demurrer to the original complaint was argued and overruled, but shortly before the date set for trial an amended complaint was filed which, after the court had ruled on various motions, was reduced to substantially the same allegations as the original complaint. After the usual formal matters in regard to the character of plaintiff and defendant, the complaint continues as follows:

"That the defendant, in the distribution of electric power, maintains high voltage wires over the Salt River Valley to convey its electric power sold and furnished to subscribers and members; that on or about the 23rd day of May, 1930, and at all times mentioned in this complaint, the defendant maintained poles hereinafter described for the purpose of fastening high voltage and dangerous electric wires, said poles being constructed alongside and in the public highways of Maricopa County, Arizona, one of which was located at the northeast corner of the intersection of the Grand Canal and Lateral 15, said poles being made of iron or other metal, and consisting of two pieces running from the ground up some thirty feet high, being somewhat wider at the bottom than at the top, the said two metal pieces being connected with criss-cross iron running from the bottom to the top of said poles, constructed in a manner that they are very much like ladders so that said poles are easily climbed by children, and are loaded with high voltage of electricity and having latent danger unobserved by children of tender years. That said poles were without guards or warning signs. That at the top of the poles there are cross beams for the purpose of placing copper wires which carry electricity; that the said cross beams, in the manner in which they are fastened to the top of the poles, make good places for birds to nest and to lay eggs and raise young, and that on said date, and prior thereto, birds were constantly building in the tops of the poles, which the defendant well knew or, by the exercise of ordinary care, could have known. That the said poles being erected on the public highway at a place where the plaintiff and other children were in the habit of playing were especially attractive to children of tender age to climb to explore for bird nests in accord with the sportive instincts or uncontrolled and undisciplined impulses of children. That the defendant knew or, by the exercise of ordinary care, could have known that birds would have built their nests in the top of said poles and that the poles being so constructed ladder-like were accessible and easily climbed. That the defendant could have anticipated, and it was the duty of the defendant to have anticipated, the propensity of chil-

dren of tender years to climb said ladder poles for bird nests; that the defendant did know or, by the exercise of ordinary care, could have known that birds would and did build nests on cross beams and that children of tender years would climb such poles placed on said highways to explore the contents of such bird nests. That notwithstanding such knowledge, the defendant so placed poles, constructed as aforesaid, easily accessible, and easily climbed, and in addition thereto, where birds would nest in the tops, making the climbing of the poles especially attractive to the young and undisciplined mind, and notwithstanding such knowledge, the defendant placed on said poles, on the cross beams thereof, wires uninsulated and at times being loaded with heavily charged voltage of electricity, rendering the said wires positively dangerous to anyone who might come in contact with them, so that the poles, constructed in the manner aforesaid and loaded with dangerous electricity, were highly dangerous to children playing along said highway, as they are in the habit of doing, and which this plaintiff was in the habit of doing, which danger to children, by the exercise of ordinary care, could have become known to the defendant and was known to the defendant. That the defendant unlawfully and wilfully and negligently, constructed poles in the manner aforesaid and maintained them on the public highways of Maricopa County, Arizona, one being at the place aforementioned.

"That on or about the 23rd day of May, 1930, the plaintiff being a child of thirteen years and somewhat backward in growth and mentality, but with the usual propensity of children to climb and to seek bird nests which were built by birds on the top of the poles which had been negligently, unlawfully and wilfully constructed and erected by the defendant, which were especially attractive and accessible to children of tender years, and the plaintiff being so young as to not know the danger of high voltage wires that were at the top of said poles, did, in the exercise of his childish instincts and propensity, climb the pole erected on said highway at the northeast corner of the intersection of the Grand Canal and Lateral 15 for the purpose of exploring a nest that was built at or

near the top of said pole, and while climbing said pole came in contact with the high voltage wires, and after being held and burned for some time, was knocked from the pole to the ground, falling from 25 to 30 feet. . . . ''

The issues were tried to a jury, which returned a verdict in favor of plaintiff for the sum of $25,000, and after the usual motion for new trial was overruled, the case was brought before us in this appeal.

Plaintiff contends most strenuously in his brief ''that we are basing this suit on common law negligence,'' while defendant insists with equal earnestness that the complaint can be sustained only on the theory that it sets up an action for maintaining what is called an ''attractive nuisance.'' The two matters are so interwoven in argument that we think it best to discuss both theories of the case.

The law in regard to the proper handling of electric currents is of comparatively recent development, and is still to a great extent in its formative period. The decisions on the subject are in apparent hopeless contradiction, and cases can be found supporting almost any view as to the extent of the responsibility of those engaged in dealing with such currents. We think the best rule in regard to the care necessary in handling high-power transmission lines may be stated as follows:

''Those engaged in transmitting such a dangerous force as electricity, which gives no warning of its presence and is not apparent to the senses, are required to exercise a degree of care in constructing and maintaining the wires over which it is transmitted commensurate with the danger to be apprehended from contact with such wires or the escape of electricity therefrom; but they are not insurers against accidents or injuries.'' See *Bunten* v. *Eastern Minnesota Power Co.*, 178 Minn. 604, 228 N. W. 332.

It is in the application of this rule to the facts of the particular case that the difficulty lies.

Actionable negligence may be of two kinds, either statutory or common law. Where a valid statute, enacted for the public safety, or governmental regulations made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence *per se*. *Schell* v. *Dubois,* 94 Ohio St. 93, L. R. A. 1917A 710, 113 N. E. 664; *Osborne* v. *McMasters,* 40 Minn. 103, 12 Am. St. Rep. 698, 41 N. W. 543. So far as we know there is no statutory regulation forbidding defendant to maintain as a part of its high-power electrical transmission system steel or iron poles or towers of the kind described in plaintiff's complaint as the one upon which he was when he came in contact with the wires carrying the electric current. It is true the Arizona corporation commission has adopted through its amended General Order No. 37 the National Electric Safety Code, published by the Federal Bureau of Standards, and that the pole in question does not comply with the standards set up therein. It was agreed, however, by plaintiff and defendant at the trial in the lower court that defendant is not one of the classes of corporations covered by said amended General Order No. 37, and that the order does not apply to it. There is, therefore, nothing in the record showing that the defendant is guilty of statutory negligence.

The second question is as to common-law negligence. This may be defined as follows:

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done. The essence of the fault may lie in omission or commission." See *Baltimore & P. R. R. Co.* v. *Jones,* 95 U. S. 439, 24 L. Ed. 506, and *Morenci Southern Ry. Co.* v. *Monsour,* 21 Ariz. 148, 185 Pac. 938.

Tested by this definition, is there any common-law negligence alleged in plaintiff's complaint? The only thing defendant did which might by any possibility be called negligence was to ''maintain poles hereinafter described for the purpose of fastening high voltage and dangerous electric wires, said poles being constructed alongside and in the public highways of Maricopa County, Arizona, . . . said poles being made of iron or other metal and consisting of two pieces running from the ground up some thirty feet high, being somewhat wider at the bottom than at the top, the said two metal pieces being connected with criss-cross iron running from the bottom to the top of said poles, constructed in a manner that they are very much like ladders . . . and are loaded with high voltage of electricity. . . . That said poles were without guards or warning signs. That at the top of the poles there are cross beams for the purpose of placing copper wires which carry electricity. . . . That . . . defendant placed on said poles, on the cross beams thereof, wires uninsulated and. at times being loaded with heavily charged voltage of electricity, rendering the said wires positively dangerous to anyone who might come in contact with them. . . . '' In other words, was it negligence for defendant to maintain a pole of the kind described on the public highways of Maricopa county?

That the defendant was authorized by the board of supervisors of the said county to maintain transmission lines in the highways is not disputed. Nor is it contended that the poles in question were maintained in a manner not in conformity with said permission. It is claimed, however, by plaintiff that the maintenance of poles of the character described was as a matter of law negligence. We have examined carefully all the cases cited by counsel for plaintiff, and so far as we have been able to determine the only cases which even tend to support his theory that the main-

tenance of a structure of the kind in question, on or near a highway, is negligence within the common-law definition of the term so that a person who is injured as the result of climbing it may recover for the injury, are those of *Burns* v. *City of Chicago,* 248 Ill. App. 204; *Klingensmith* v. *Scioto Valley Traction Co.,* 18 Ohio App. 290, and *Robertson* v. *Rockland L. & P. Co.,* 187 App. Div. 720, 176 N. Y. Supp. 281. The language of the opinion in the first-named case is fairly susceptible of an interpretation sustaining plaintiff's contention, although even in that there is an intimation which causes us to believe that the court really based its decision on the attractive nuisance doctrine. When, however, the case was taken to the Supreme Court of the state, the latter reversed the appellate court, holding that there was no negligence of any kind. *Burns* v. *City of Chicago,* 338 Ill. 89, 169 N. E. 811. The two last-named cases are from intermediate courts, and find no support in the courts of last resort in their respective jurisdictions.

The general principle of law applicable to the maintenance of high-power transmission lines seems to be that the duty of providing insulation or safeguards' for such lines is limited to the points or places where there is reason to apprehend that persons may come in contact with the wire, and the law does not compel electric companies to protect their wires everywhere, but only at places *where people may legitimately go for work, business, or pleasure;* that is, where they may reasonably be expected to go. *Hines* v. *Consumers' Ice & L. Co.,* 168 Ark. 914, 272 S. W. 59; 9 R. C. L., p. 1213, and cases cited; 20 C. J. 345. For example, it has been held negligent to string unprotected high-tension wire over the top or alongside of a bridge where workmen might be expected to come into contact therewith. *Hoppe* v. *City of Winona,* 113 Minn. 252, Ann. Cas. 1912A 247, 33 L. R. A. (N. S.) 449, 129 N. W. 577. It has also been held negli-

gent to permit such wires to pass through the branches of trees near streets or grounds upon which children play, as it might be anticipated that the trees might be climbed. *Temple* v. *McComb City E. L. & P. Co.,* 89 Miss. 1, 119 Am. St. Rep. 698, 10 Ann. Cas. 924, 11 L. R. A. (N. S.) 449, 42 South. 874. It is also held negligent to fail to maintain the wires at a sufficient height above the highway to permit the unobstructed passage of objects generally moved along the highway. *Shank* v. *Great Shoshone etc. Co.,* (C. C. A.) 205 Fed. 833. But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because someone doing an act which it had no reason to expect suffers an injury which might not have been sustained if the wires had been safeguarded in a different manner from that in which they were. *Fairbairn* v. *American River Elec. Co.,* 170 Cal. 115, 148 Pac. 788; *Mayhew* v. *Yakima Power Co.,* 72 Wash. 431, 130 Pac. 485. Particularly is this true when, in order to reach the place of danger, it was necessary for the injured person to trespass on the property or structure maintained by the electric company.

No person is obliged to anticipate that others will trespass on his property, and if without his knowledge and against his will they do so, he cannot be held responsible for injury which results from such trespass. *Burnett* v. *Ft. Worth L. & P. Co.,* 102 Tex. 31, 19 L. R. A. (N. S.) 504, 112 S. W. 1040; *Newark E. L. & P. Co.* v. *Garden,* (C. C. A.) 78 Fed. 74, 37 L. R. A. 725; *City of Greenville* v. *Pitts,* 102 Tex. 1, 132 Am. St. Rep. 843, 14 L. R. A. (N. S.) 979, 107 S. W. 50; *State* v. *Chesapeake & P. Tel. Co.,* 123 Md. 120, 52 L. R. A. (N. S) 1170, 91 Atl. 149; 9 R. C. L. 1207; 20 C. J. 349. Defendant could not be presumed

to anticipate that any person except a trespasser or its employees, engaged in working upon the towers in question, could or would be exposed to danger from a high-power transmission line constructed as was the one described in the complaint. And we are of the opinion it was not negligence for the defendant to maintain such poles and lines in the manner in which the complaint alleges that they were maintained, as against the acts of a trespasser, and from all the evidence it is abundantly clear that plaintiff was a trespasser on the pole in question at the time he was injured. The judgment rendered cannot be sustained upon the theory that defendant was guilty of either statutory or common-law negligence.

There is, however, one well-known exception found in many jurisdictions to the ordinary rule that a trespasser may not recover damages for injuries received as a result of his trespass, and that is what is known as the law of "attractive nuisance." This exception was first suggested, so far as we are aware, in the case of *Lynch* v. *Nurdin,* 113 E. R. 1041, 1 Q. B. 29. The question later came before the Supreme Court of the United States in *Sioux City etc. Co.* v. *Stout,* 84 U. S. (17 Wall.) 657, 21 L. Ed. 745, and was again discussed by the same court in *Union Pacific R. Co.* v. *McDonald,* 152 U. S. 262, 38 L. Ed. 434, 14 Sup. Ct. Rep. 619. The rule laid down in those cases may be summarized as follows: When a child of tender years commits a mere technical trespass, and is injured by agencies that to an adult would be open and obvious warnings of danger, but not so to a child, he is not debarred from recovering, if the things instrumental in his injury were left exposed and unguarded, and were of such a character as to be likely to attract children, excite their curiosity, and lead to their injury, while they were pursuing their childish instincts. Such dangerous and attractive instrumentalities become an invitation by implication.

Most of the states have adopted in one form or another this exception to the law governing responsibility for negligence to a trespasser, although some refuse to accept it. It will be noted, however, on a careful examination of the cases upholding this doctrine, that the reasons on which it rests do not in any way contradict or conflict with the general rule that owners of dangerous appliances, and particularly electric companies, are only required to safeguard their property where there is reason to apprehend that persons may legitimately come into the danger zone. It merely says that due to the well-known and natural propensity of young children to be attracted by certain things, if you maintain such objects and they are attracted thereby, their presence there is presumed as a matter of law to be legitimate, and you are bound by the ordinary rules of negligence applying in such a case. Its only practical effect is to do away with the defense that it could not reasonably have been anticipated that the injured party would have been legitimately at the place where the injury occurred. Every other principle applicable to the ordinary action of negligence still obtains. It is only another application of the old common-law rule that even as against a trespasser, man or animal, one could not bait a trap, and then plead exemption from liability for an injury caused by the trap.

" 'It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded in his land a dangerous machine, so that his neighbor's child, attracted to it, and tempted to intermeddle with it, by instincts equally strong, might thereby be killed or maimed for life.' " *Union Pacific etc. Co.* v. *McDonald, supra.*

But not all objects which are attractive to children and which may lure them into danger are held to be attractive nuisances, even in the states which carry this doctrine to its greatest extent, and the tendency of most courts, even of that which first brought it into American law, is to limit and narrow its application. *United Zinc & Chemical Co.* v. *Britt*, 258 U. S. 268, 36 A. L. R. 28, 42 Sup. Ct. Rep. 299, 66 L. Ed. 615; *New York, N. H. & H. Ry. Co.* v. *Fruchter*, 260 U. S. 141, 67 L. Ed. 173, 43 Sup. Ct. Rep. 38; *Carr* v. *Oregon-Washington R. & N. Co.*, 123 Or. 259, 60 A. L. R. 1434, 261 Pac. 899; *Holstine* v. *Director General*, 77 Ind. App. 582, 134 N. E. 303; *Kelly* v. *Benas*, 217 Mo. 1, 20 L. R. A. (N. S.) 903, 116 S. W. 557. As was said in the case last cited:

"If the old channel of the law is to be quite changed by the application of the new doctrine automatically and without discrimination, if sentimental considerations (however elevated and tender) are to usurp the place of cold and calm reason as the foundation for rules of law, then the floodgate now damming back liability will be raised, letting in strange and deep waters for the landowner to struggle with. Not only will he be liable for boys drowned while swimming in his stock pond (the idea of swimming being alluring to a boy), for those who fall into uncovered wells, cisterns, and cellars (the notion of playing on the brink of such being a boyish one), for children who are suffocated while playing in piles of sand accumulated for building purposes or in sliding down stacks of straw unscientifically piled and exposed, but he may be mulcted in damages for injuries to his neighbors' children, who, romping in his haymow, without his invitation, break their bones by sliding down his hay chute, or those who, playing in his rock quarry, are hurt. Shall he fence against adventurous trespassing boys? Almost as well suggest 'that he build a wall against birds.' If he is held to liability for injury to the children of Jones because of the way he piles his lumber, by the same token, as to Brown, liability would be fastened on him for the way he

piles his stones, his bricks, his corn in pens, his hay-ricks, and his cordwood on his private grounds; in fact, as has been pointedly said, every landowner will be liable for injuries to his neighbor's children under the new doctrine except the neighbor himself."

The question of the application of this doctrine came before this court in the case of *Salladay* v. *Old Dominion etc. Min. Co.*, 12 Ariz. 124, 100 Pac. 441, and we held, Arizona being at that time a territory, that we were bound by the rule laid down by the Supreme Court of the United States in the Stout and McDonald cases, *supra,* and have since followed it in *Southwest Cotton Co.* v. *Clements,* 25 Ariz. 124, 213 Pac. 1005. If, therefore, the complaint and evidence in the present case bring it within the rule laid down by us in the Salladay case, *supra,* while plaintiff cannot recover on the ground that defendant was guilty of negligence in the ordinary sense of the term, he may recover on the ground that defendant maintained a so-called "attractive nuisance."

It is urged by defendant that the Salladay case in effect removed structures of the nature of those in the present case from the class of attractive nuisances. Chief Justice KENT in that case stated that the decisions regarding attractive nuisances might be divided into four classes: (1) where the doctrine is entirely repudiated; (2) where it is accepted, but confined to turntables, as in the Stout case, or to attractive, dangerous machinery; (3) where it is held to cover various latent and hidden dangers; and (4) where it is held to cover or is extended to cases of patent and visible alluring dangers other than those arising from mechanical appliances, defective or otherwise. The court held that the doctrine should not be extended to the fourth class of cases, and said:

"We are inclined to confine the extent of the decision therein to conditions where the landowner has *neglected some usual or customary precaution,* or where the danger to be guarded against was tempo-

rary or unexpected, or *not entirely open to observation* —such conditions as the Supreme Court had before it and has passed upon in the two cases cited—and to hold that the decision does not reach cases where the danger is not only obvious, but where the object itself from which the danger arises is of such a character that, as has been said, 'from the reason of the thing and the customs of the community the defendant was entitled to assume that the plaintiff's natural guardians would protect him from any dangers attached thereto as they easily could and ought to have done.' '' (Italics ours.)

This decision never has been reversed or qualified by this court. Counsel urge that in *Southwest Cotton Co.* v. *Clements* we have extended the doctrine to objects of the class excluded from it in the Salladay case. We think the contention is not well-founded, but that the dynamite caps in that case came rather under the head of a latent and hidden danger within the third class above described.

So far as the authorities from other jurisdictions on an analogous state of facts are concerned, there is a hopeless conflict. The particular feature of the pole in question which plaintiff alleges made it obnoxious was the fact that it had cross-members which in effect made it a ladder, and thus attractive to the ordinary child. The courts deciding the following reported cases would probably have held the pole in question in this case to have been an "attractive nuisance": *Robertson* v. *Rockland, L. & P. Co.,* 187 App. Div. 720, 176 N. Y. Supp. 281; *Znidersich* v. *Minnesota U. Co.,* 155 Minn. 293, 193 N. W. 449; *Klingensmith* v. *Scioto etc. Co., supra; McKiddy* v. *Des Moines E. Co.,* 202 Iowa 225, 206 N. W. 815; *Clark* v. *Pacific Gas & Elec. Co.,* (Cal. App.) 5 Pac. (2d) 58; Id., 118 Cal. App. 344, 6 Pac. (2d) 297; *Wolczek* v. *Public Service Co.,* 342 Ill. 482, 174 N. E. 577; *McCoy* v. *Texas P. & L. Co.,* (Tex. Com. App.) 239 S. W. 1105; *Hurd* v. *Phoenix Co.,* 7 Boyce (Del.) 332, 106

Atl. 286. In all of these cases the fact that the pole in question was in effect a permanent ladder seemed to be the vital element.

On the other hand, somewhat similar structures have been held not to be "attractive nuisances" in the following cases: *State* v. *Trimble*, 315 Mo. 32, 49 A. L. R. 1047, 285 S. W. 455; *Simonton* v. *Citizens' E. L. & P. Co.*, 28 Tex. Civ. App. 374, 67 S. W. 530; *Anderson* v. *Kansas City etc. Co.*, 127 Kan. 375, 273 Pac. 397; *Reddy* v. *Watertown*, 53 S. D. 347, 220 N. W. 851; *New York, N. H. & H. Ry. Co.* v. *Fruchter, supra.*

The question is one of extreme difficulty. On the one hand, in our modern civilization in the southwest high-power electric lines are almost as vital for the maintenance of prosperity as are the irrigation ditches and flumes of the Salladay case, and a rule which would put a prohibitive cost on their maintenance should not be lightly adopted by the courts. On the other hand, the mere cost of giving to another that protection to which the law says he is entitled should never be accepted as an excuse for failure to provide it. After a careful consideration of all the cases and the present state of knowledge in the electrical industry, we are inclined to think that "usual and customary precaution" therein, according to the latest and best practice, does not permit poles carrying high-power transmission electric lines in places easily and usually accessible to children to be constructed so as to be in effect unguarded ladders up which such children can climb in the ordinary manner, without exposing the owner to the usual liabilities of one who maintains an attractive nuisance.

The complaint therefore sets up, and there is evidence in the record from which a jury could fairly find, that the pole on which plaintiff was injured might under some circumstances be such an attractive nuisance as would support a verdict in favor of a child who was injured thereon. But the record in

this case conclusively shows other facts which bar plaintiff's recovery. Regardless of what the respective decisions may hold as to what does or does not constitute an attractive nuisance, there is practical unanimity in them that no matter how attractive an object may be, unless it was the attraction of *that particular object* which lured the child to its injury, the doctrine can have no application, and even though an attractive nuisance may exist on the premises of a land owner, if the real lure was not such nuisance, but something else, there can be no recovery in case of injury. *Erie R. Co.* v. *Hilt*, 247 U. S. 97, 62 L. Ed. 1003, 38 Sup. Ct. Rep. 435; *Fusselman* v. *Yellowstone Valley etc. Co.*, 53 Mont. 254, Ann. Cas. 1918B 420, 163 Pac. 473; *Shaver's Admr.* v. *Louisville etc. Co.*, 207 Ky. 180, 268 S. W. 1082; *Carr* v. *Oregon-Washington R. Co.*, *supra;* 45 C. J. 767; *Sweeden* v. *Atkinson Imp. Co.*, 93 Ark. 397, 27 L. R. A. (N. S.) 124, 125 S. W. 439.

In this case the complaint alleges positively, fully and without equivocation that plaintiff went to the place where he was injured, not by reason of the attractiveness of the pole, but because of a bird's nest which was built in the top of the pole. The evidence of plaintiff himself was conclusive that his sole and only purpose in going upon the pole was to examine said bird's nest and perhaps to rob it. Plaintiff argues most strenuously that the bird's nest also constituted an attractive nuisance for which defendant was responsible. We think, however, this contention is untenable both on reason and authority.

A similar situation has come before the courts in regard to various natural objects, and it is practically invariably held that such objects, no matter how attractive they may be for children in themselves, do not come within the doctrine of attractive nuisances. *Johnson* v. *Atlas Supply Co.*, (Tex. Civ. App.) 183 S. W. 31; *Fuscia* v. *Central L. & P. Co.*, 2 La. App.

195; *McFarland* v. *Martin*, 90 Pa. Super. Ct. 151; *Myer* v. *Union L. H. & P. Co.*, 151 Ky. 332, 43 L. R. A. (N. S.) 136, 151 S. W. 941. And several cases directly involving birds' nests are to the same effect. *Kent* v. *Interstate etc. Co.*, (Ind. App.) 168 N. E. 465; *Cox* v. *Des Moines etc. Co.*, 209 Iowa 931, 229 N. W. 244; *Graves* v. *Washington Water Power Co.*, 44 Wash. 675, 11 L. R. A. (N. S.) 452, 87 Pac. 956; *New York, N. H. & H. R. Co.* v. *Fruchter, supra.*

It is argued with much vehemence by plaintiff that it was the duty of defendant to anticipate that birds might build in poles of this nature, and to remove such nests so as to prevent their attracting minor children. No cases have been cited to us supporting this position, and we think it is unreasonable to impose such a liability on defendant, especially in view of the fact that since under the federal statutes (16 U. S. C. A., section 701 et seq.) it is a misdemeanor to molest the nest of certain classes of birds, plaintiff's suggestion would impose upon defendant the duty of examining each and every nest on its transmission lines, and determining at its peril whether the nest was of a character it could remove legally, with the assurance that the nests which it must allow to remain would be just as much of an attraction to a child.

In view of what we have said, we think it unnecessary to consider the other assignments of error.

The case must be reversed and remanded to the trial court, with instructions to enter judgment for the defendant.

McALISTER, C. J., and ROSS, J., concur..