PHILIP SOULE vs. MASSACHUSETTS ELECTRIC COMPANY & another.[1]

Plymouth. February 7, 1979. — June 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Negligence*, One owning or controlling real estate, Child trespasser.

There is a common law duty of reasonable care by a landowner or
occupier to prevent harm to foreseeable child trespassers. [180-184]
The fact that the Legislature enacted G. L. c. 231, § 85Q, prospectively
altering the common law rule with respect to a landowner's duty
to child trespassers, did not preclude judicial action to accomplish
a similar result retroactively as a matter of common law. [184-185]
In an action for negligence by a child injured while trespassing on a
utility company's property, this court declined to reconsider the
legal duty owed to other classes of potential tort plaintiffs as far as
it is based on their status as invitees, licensees, or trespassers.
[185-186] HENNESSEY, C.J., and KAPLAN, J., concurring.
In an action by a child trespasser to recover for injuries suffered when
he came into contact with a high-voltage electrical wire at an elec-
tric power substation, evidence that the electric power substation
did not meet reasonable safety standards for the industry, that
children were known to play frequently in the area, and that the
defendant failed to fence in the station, post a warning sign, or
elevate the high-voltage wires higher above the floor of the station
warranted a finding that the defendant was negligent. [186-187]

---

[1] The plaintiff's original complaint named Massachusetts Electric
Company (formerly known as Weymouth Light and Power Company),
New England Power Company, New England Power and Service Com-
pany, and the town of Hingham as defendants. The action was dis-
missed with prejudice against the town of Hingham prior to trial. A
substituted complaint named only Massachusetts Electric Company
and Weymouth Light and Power Company as defendants. Massachu-
setts Electric Company is the successor company to Weymouth Light
and Power Company, having been formed in 1960 from the merger of
Weymouth Light and Power Company and a number of other small,
local utility companies.

TORT. Writ in the Superior Court dated May 15, 1968. The action was tried before *Adams*, J. .

The Supreme Judicial Court granted a request for direct appellate review.

*Sanford A. Kowal* for the plaintiff.

*Philip W. Riley* (*Peter C. Kober* with him) for the defendants.

QUIRICO, J. In 1954, when the plaintiff was eight years old, he climbed up to an electric power substation controlled and operated by the defendant's[2] predecessor Weymouth Light and Power Company, and was severely injured by coming into contact with a 13,800 volt electrical wire. On November 21, 1977, a jury awarded the plaintiff damages of $230,000 for injuries from this accident and gave the following answers to three questions posed to them on a special verdict: (1) Was the defendant negligent and, if so, was the defendant's negligence a proximate cause of the plaintiff's injuries? Yes. (2) Was the plaintiff negligent and, if so, was the plaintiff's negligence a proximate cause of the plaintiff's injuries? No. (3) Did children of the plaintiff's age, or younger, or a few years older, frequent the area in which the defendant's switching station was located during 1954, and for a period of several years before the plaintiff's accident, and, if so, should the defendant have reasonably known this to be so? Yes. On November 30, 1977, the judge allowed the defendant's motion for judgment notwithstanding the verdict, and judgment was entered for the defendant. The plaintiff appealed. We reverse the allowance of the motion, and reinstate the jury verdict.

The facts are briefly these: the switching station on which the accident occurred was a wooden platform with fenced-in sides containing electrical equipment. This platform was suspended between two wooden poles at a

---

[2] Although technically there are two defendants, we use "defendant" in the singular to refer to Massachusetts Electric Company, which is the successor to Weymouth Light and Power Company.

height of approximately eight to fifteen feet above the ground;[3] a metal switch handle and pipe ran up the side of each pole starting at a height of about three feet above the ground. The station was located along a line of considerably taller electric company poles carrying high voltage wires. This entire line was located in the area of an easement given to the electric company which in turn passed through a nine acre plot of land owned by the town of Hingham.[4]

The town land, which was open, was commonly used by the townspeople for hunting and recreation, and was frequented by children. On the day of the accident, the plaintiff and his friend Randolph C. Jenkins, also eight years old, were playing there, as they did several times each week. Coming to the vicinity of the switching station, and thinking that the wooden enclosure "would be a good lookout tower,"[5] the boys decided to climb up to it. Above one of the supporting poles there was a square opening in the wooden floor of the platform.[6] An uninsulated wire carrying 13,800 volts of electricity ran six to twelve

---

[3] The parties do not agree on its height, and no conclusive evidence on the subject was admitted at trial.

[4] The company claimed the right to the easement by virtue of a 1933 deed which the plaintiff claims was technically invalid due to a failure to record. Both parties have devoted considerable argument to the existence or nonexistence of this easement. It is undisputed that for over forty years the company's electrical poles have stood there. In view of our disposition of the case, the exact status of the easement is immaterial. Our reference to it is not to be taken as proof of its technical validity, which is disputed by the plaintiff, but merely as a convenient shorthand for describing the property arrangements at the scene where the accident occurred.

[5] The plaintiff had no memory of anything that occurred between the time he and Randolph Jenkins left the house to go play on the day of the accident and four weeks afterward, when he regained full consciousness in the hospital. The testimony of how the accident occurred was given by Jenkins, the only witness, and it is his account that is relied on here.

[6] This opening was a fuse ejector hole that no longer served any purpose at the time of the accident.

inches above the platform floor directly over this hole. Philip climbed up the pole and stuck his head through this opening, coming into contact with the wire. He was knocked unconscious and fell to the ground, receiving serious burns on his scalp, face, feet, and leg.

Under the traditional common law analysis, Philip became a trespasser when he climbed the electric company's pole to the platform, and therefore the company had no duty toward him except to refrain from wanton and wilful misconduct, which is not alleged here. *Urban v. Central Mass. Elec. Co.*, 301 Mass. 519, 523 (1938). This "Draconian"[7] doctrine concerning child trespassers has recently been softened in Massachusetts by the passage of G. L. c. 231, § 85Q, inserted by St. 1977, c. 259 (approved June 6, 1977, effective ninety days thereafter), which provides: "Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (a) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (b) the condition is one of which the land owner knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (d) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the land owner fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." It is clear from the jury's answers to the questions posed on the special verdict that if the statute were applicable to this case the plaintiff would have a right to recover thereunder. The statute,

---

[7] *United Zinc & Chem. Co.* v. *Britt*, 258 U.S. 268, 276 (1922) (Clarke, J., dissenting).

however, did not become effective until more than twenty-three years after the plaintiff was injured, and thus is too late to be of assistance to him. Recognizing that "[t]he general rule of interpretation is that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication," *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626 (1974), quoting from *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914), the plaintiff quite rightly does not ask us to hold that it applies retroactively to his case. He asks instead that we (1) abolish the common law distinctions between trespassers and lawful visitors altogether, or (2) articulate a "dangerous instrumentality" exception to the traditional rule of no liability to trespassers, or (3) declare that as a matter of common law there is an exception for trespassing children basically equivalent in scope to that of G. L. c. 231, § 85Q.[8] Because we believe that the action of the Legislature in passing § 85Q was not meant to, and does not, foreclose us from announcing compatible changes in the

---

[8] The plaintiff also advances other arguments resting on his allegation that the 1933 deed of easement giving the defendant the right of way for the power line was technically invalid by reason of a failure to record (see note 3, *supra*). Based on this alleged invalidity, he further argues that it was the defendant who was the trespasser, not the plaintiff, and that therefore the defendant did have a duty of reasonable care toward the plaintiff. As noted above, we do not attempt to resolve the property law question in this case, for in the end it makes no difference. Regardless of the technical status of an easement deed which had been accepted as valid by all concerned parties for many years, the actual relationship of the plaintiff and the defendant remained the same in every meaningful way. The boy was rightfully on the town land, which was open for the common use of area residents. He knew, by his own testimony, that the poles and switching station belonged to either the telephone or electric company, and that he should not by right be climbing on them. The question whether, and if so, when, his status technically changed from that of invitee to licensee to trespasser as he walked up to the pole, suggests — as the plaintiff himself points out — more the inadequacy of the common law mode of analysis, than it helps to shed any light useful in resolving this issue.

common law of torts, consistent with the trend of our decisions in *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696 (1974), and *Poirier* v. *Plymouth,* 374 Mass. 206, 221-228 (1978), we hold that there is a common law duty of reasonable care by a landowner or occupier to prevent harm to foreseeable child trespassers, and that therefore the evidence in this case was sufficient to support the verdict which the jury returned in favor of the plaintiff.

In *Mounsey, supra,* this court indicated clearly that the days of the common law approach to the problem of a land occupier's duty in tort were numbered. "The problem of allocating the costs and risks of human injury is far too complex to be decided solely by the status of the entrant, especially where the status question often prevents the jury from ever determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case." *Id.* at 707. In that case we held that henceforth there would be no distinction in the duty owed to invitees and licensees, and that all lawful visitors would be owed a duty of reasonable care. Since then, we have extended the same duty to other previously unprotected classes in *Pridgen* v. *Boston Hous. Auth., supra* (helplessly trapped trespassers), *Lindsey* v. *Massios,* 372 Mass. 79, 83 (1977) (visitors of a tenant), *King* v. *G & M Realty Corp.,* 373 Mass. 658, 662 (1977) (tenants), and *Poirier* v. *Plymouth,* 374 Mass. 206, 228 (1978) (employees of an independent contractor).

Even under the traditional common law analysis, the duty to foreseeable child trespassers exception has had a long history in other jurisdictions. See *Railroad Co.* v. *Stout,* 84 U.S. (17 Wall.) 657 (1873). This doctrine developed originally through the legal fiction of an "attractive nuisance" which lured children onto the land to their peril, and by 1934 it had been recognized in § 339 of the Restatement of Torts, minus the fiction of "attraction."[9]

---

[9] Section 339 of the Restatement (Second) of Torts (1965) is essentially the same as the 1934 version, with some amendments, and reads as

The key conditions for the exception, instead, were given as the foreseeability of the presence of the children, and the balancing of the hardship to the land occupier in requiring him to provide protection on the one side, against the magnitude of the risk on the other. A number of courts long ago affirmed awards of damages on such a doctrine to children who had been electrocuted while climbing upon electric company installations. See, e.g., *Arkansas Power & Light Co.* v. *Kilpatrick*, 185 Ark. 678 (1932); *Wolczek* v. *Public Serv. Co.*, 342 Ill. 482, 493 (1930); *Harris* v. *Indiana Gen. Serv. Co.*, 206 Ind. 351, 358-359 (1934); *Znidersich* v. *Minnesota Utils. Co.*, 155 Minn. 293, 296 (1923); *Robertson* v. *Rockland Light & Power Co.*, 187 App. Div. 720, 730-731 (N.Y. 1919); *Afton Elec. Co.* v. *Harrison*, 49 Wyo. 367 (1936). By 1971, only seven jurisdictions continued to reject a duty to foreseeable child trespassers exception to the common law rule of nonliability to trespassers. W. Prosser, Torts 365 (4th ed. 1971). At least two of those States have since adopted it. *Jones* v. *Billings*, 289 A.2d 39, 43 (Me. 1972). *Haddad* v. *First Nat'l Stores*, 109 R.I. 59, 63 (1971).[10] Prior to *Mounsey*, Massa-

follows: "Artificial Conditions Highly Dangerous to Trespassing Children

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

[10] Besides Massachusetts, the only States which do not now recog-

chusetts rejected the exception under its "attractive nuisance" label. *Prudhomme* v. *Calvine Mills, Inc.*, 352 Mass. 767 (1967). *Daniels* v. *New York & New England R.R.*, 154 Mass. 349, 354 (1891).

Considering the long history of the child trespasser exception, the dwindling number of States which do not recognize the exception, and the intent expressed in a line of our decisions, commencing with *Mounsey*, to depart from archaic common law rules governing liability of owners and occupiers of property, we think it reasonable to state that if the Legislature had not first enacted G. L. c. 231, § 85Q, in 1977, we would probably have applied the rule of § 339 of the Restatement (Second) of Torts, which is practically identical to that statute, in this case. Since *Mounsey*, we have been moving in the direction of developing by judicial decision a rule which would impose on landowners a duty to exercise "reasonable care in all the circumstances." Where the trespasser is a child, who is unable to appreciate danger as intelligently as an adult; where that child's presence is foreseeable; and where the burden of undertaking precautions is not great compared to the magnitude of the risk involved; surely it is appropriate to call for the exercise of "reasonable care" toward that child notwithstanding his status as a trespasser. The notion that landowners have no duty toward children in such a situation should now be recognized to be an outmoded relic of an era when the law, as a matter of course, considered the rights of property owners superior to the safety of trespassing children.

Our adoption, as a matter of common law, of the "duty to child trespassers" rule reinstates the judgment of the jury for this plaintiff. The fact that the Legislature acted consistently with the trend of the law as expressed by this court *before* this case reached us for decision does not

---

nize the "child trespasser" exception are Maryland, New Hampshire, Ohio, and Vermont.

constitute a compelling reason to deny this plaintiff the verdict which would otherwise be his.

The defendant points to cases like *Vaughan* v. *Commonwealth*, 377 Mass. 914 (1979) (governmental immunity), *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 631 (1978) (strict liability in tort), *Kolofsky* v. *Heath*, 370 Mass. 855, 856 (1976) (liability to guest passengers), and *Ricker* v. *Northeastern Univ.*, 361 Mass. 169, 171 (1972) (charitable immunity), as instances where, because the Legislature had prospectively altered a traditional rule of law by statute, this court declined to accomplish a similar result retroactively as a matter of common law, even though it might otherwise have done so if there had been no change by statute. The defendant's suggestion is that we should follow the same course here. However, there is an important distinction between the cited cases and the present one. The other statutes concerned matters about which this court had either been silent, or had actively solicited legislative intervention in preference to judicial decision making, thereby evidencing a policy of deference to the Legislature. By contrast, the modernization of the area of tort law involved in the present case is a process which this court began well before the Legislature passed § 85Q. Being a product of the common law, tort immunities are appropriately a subject for *both* legislative and judicial lawmaking. Cf. *Whitney* v. *Worcester*, 373 Mass. 208, 210 (1977) (governmental immunity ultimately a subject for legislative, *not* judicial action). The plaintiff's citation of *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184, 195 (1973), as a decision holding that in certain cases legislative action should be complemented by judicial action, rather than precluding it, seems to us an apt analogy.

The plaintiff would have us go even further and seize on this case as the opportunity to abolish *all* distinctions between different classes of potential tort plaintiffs in so far as they are based on their status as invitees, licensees, or trespassers. This we decline to do. The most compelling

reason for declining to do so is that, since there is no adult trespasser in this case, we prefer to defer reconsideration of the legal duty owed to such a trespasser until the question arises in the context of a concrete fact situation. Furthermore, as we stated in *Mounsey,* "there is significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right." *Mounsey, supra* at 707 n.7. In the present case the plaintiff, in addition to being a child, entered the land of the town surrounding the electric power substation under color of right — the right of all the townspeople to recreational use of the town's public land. Although perhaps he technically became a "trespasser" once he stepped off the land and started to climb the defendant's power poles, intuitively one recognizes that this is a trespass which is at least different in degree from that of the classical "poacher" or outlaw who invades, perhaps even by breaking a fence or climbing a wall, the private land of another. Indeed, at least two courts have recognized that climbing onto electric company installations located on public land is a special case different from the ordinary trespass. *Znidersich* v. *Minnesota Utils. Co.,* 155 Minn. 293, 296 (1923). *Robertson* v. *Rockland Light & Power Co.,* 187 App. Div. 720, 728 (N.Y. 1919). The difference between a child, lawfully playing in a public place, who is injured when "trespassing" on a fixture belonging to another, and a burglar, who after unlawfully invading another's private property is hurt by some condition found thereon, seems sufficiently great to make it inappropriate to comment on the legal implications of the latter type of case until we are presented with the necessity of making a decision thereon.

The defendant argues that in any event there was insufficient evidence of the defendant's negligence to support the jury's verdict. We do not agree. The plaintiff's expert testified that this electric power substation did not meet reasonable safety standards for the industry. The jury could certainly find, considering the fact that chil-

dren were known to play frequently in the area, that the defendant's failure to fence in the station, post a warning sign, or elevate the high-voltage wires higher above the floor of the station, tended to prove negligence on its part. The jury explicitly found that the plaintiff was not contributorily negligent. Therefore, the order allowing the defendant's motion for judgment notwithstanding the verdict and the entry of judgment for the defendant are reversed. The jury verdict for the plaintiff is reinstated and judgment is to be entered for the plaintiff.

*So ordered.*

HENNESSEY, C.J. (concurring). I concur in the court's result and reasoning, except that I do not join in what I construe in the opinion as modest encouragement that the court may in the future move toward abolishing all distinctions among tort plaintiffs who are invitees, licensees, or trespassers. I do not say that there may never be special circumstances in which an adult trespasser should be permitted recovery in an action for negligence against the landowner. If we must allude to the future, however, I should prefer a prediction that, in general, liability of the landowner for negligence is not to be extended to the adult trespasser. I think we show our sense of fitness in validating the claim of the child injured in the circumstances shown here; not so, if we treat adult trespassers similarly, or predict that we might.

KAPLAN, J. (concurring). Concurring, I must, in contrast to the Chief Justice, express disappointment at the intimation in the next-to-last paragraph of the court's opinion that the liability of an occupier for negligence might still be made to turn in this jurisdiction on the mere circumstance, without more, that the plaintiff had the common law status of a so called trespasser at the time of the occurrence in suit. I stated my views on the

subject in a concurring opinion in *Mounsey* v. *Ellard*, 363 Mass. 693, 717 (1973), and need not repeat them here. I should have thought that the appearance of *Pridgen* v. *Boston Housing Auth.*, 364 Mass. 696 (1974), within a year of the *Mounsey* decision, would have been sufficiently demonstrative of those views.[1] The demonstration continues with the present case.

The Chief Justice's concurrence, speaking of the iniquity of "abolishing all distinctions among tort plaintiffs who are invitees, licensees, or trespassers," may conjure up in some minds the spectre of an armed robber recovering damages for injuries suffered by him in tripping over a rug while engaged in his criminal adventure. It can be predicted flatly that that would not occur if the court should adopt quite frankly the position I espouse. The robber would be denied recovery, but not for the reason that the common law called him a "trespasser"; rather it would be for good and sufficient functional reasons that appeal to common sense. To make that common law catchword, or any other such as "invitee" or "licensee," in itself determinative, is a gateway to errors, as the history of the problem shows.

---

[1] See the reference to the *Pridgen* phenomenon in *Mariorenzi* v. *Joseph DiPonte, Inc.*, 114 R.I. 294, 305 (1975).