EDWARD J. PUSKEY & another[1] *vs.* WESTERN MASSACHUSETTS ELECTRIC COMPANY. March 11, 1986. *Negligence,* One owning or controlling real estate. *Child Trespasser.*

Puskey, at age fifteen, suffered burns from electric shock when he climbed a power transmission line tower belonging to the defendant Western Massachusetts Electric Company (WMEC). It was, Puskey complains, negligent of WMEC not to have taken more effective steps to prevent children from climbing the tower in question and to permit the climbing pegs on its tower to come within two feet seven inches of the transmission line.[2] A Superior Court judge heard the case without jury and concluded WMEC had not acted negligently. A judgment entered for WMEC, from which Puskey and his father have appealed. We affirm.

Among the facts found by the judge were the following: All the towers by which Puskey and a friend passed on the day of the accident bore signs saying "Dangerous — High Voltage — Keep Away." Following an electric shock accident in 1971, when a boy climbed a tower, WMEC placed barbed

---

[1] Commonwealth *vs.* Thomas L. Preziosi.

[1] Edward Puskey, the father of Edward J. The father brought the complaint as his son's next friend and in his own behalf for recovery of medical expenses and loss of services of his minor son.

[2] The complaint also contains two counts alleging wilful, wanton, and reckless conduct. As to those counts, the judge allowed a motion for a directed verdict at the close of the plaintiff's evidence, having presumably decided that there was no evidence that Puskey's injury resulted from intentional conduct by WMEC or conduct which was utterly indifferent to the right of Puskey not to be harmed. See *Isaacson* v. *Boston, Worcester & N.Y. St. Ry.,* 278 Mass. 378, 387 (1932). Puskey appealed from the allowance of the motion, but if the judge was right that WMEC was not negligent as to Puskey, it follows that it was not culpable for wilful, wanton, and reckless conduct.

wire around the lower levels of towers which were easily accessible. WMEC also adopted a program of cautionary education in the Pittsfield public schools and undertook an annual sign patrol.

The particular tower on which Puskey was hurt was not easily accessible; it was located in a swampy area thick with bramble and brush.[3] Foot travel was difficult and the tower was not accessible to ladder trucks or boom trucks by which barbed wire barriers could be surmounted. In order to permit access (often at night and in foul weather) to repair crews who could not approach them by vehicle, WMEC did not place wire around the towers which were relatively inaccessible. The construction of the steel lattice towers, the manner in which they were maintained, and the warning signs placed on them conformed with State and Federal statutes and regulations and industry safety standards.

Puskey, who functioned in the normal-average range at Pittsfield High School, knew that climbing the tower was dangerous and that his being wet from rain aggravated the danger. To reach the footholds fixed at right angles to vertical elements of the tower, Puskey had to scale a four-foot concrete base and clamber up nine feet of cross beams. He heard a humming noise from the wires as he climbed close to fifty feet high. On the evidence, the judge found, WMEC took reasonable steps to alert the public to the dangers of climbing the towers and took reasonable preventive measures to keep people off them. Those findings of fact we accept unless they are clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). We are not, on a review of the entire evidence, left with the firm conviction that a mistake has been committed.[4] See *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 159-160 (1977); *C. C. & T. Constr. Co.* v. *Coleman Bros.,* 8 Mass. App. Ct. 133, 135 (1979).

On the date of his accident, October 5, 1973, Puskey was a minor but he did not have the benefit of G. L. c. 231, § 85Q, inserted some four years later by St. 1977, c. 259. That statute enacted as the law of Massachusetts the text of Restatement (Second) of Torts § 339 (1965), which deals with artificial conditions highly dangerous to trespassing children. See *Soule* v. *Massachusetts Elec. Co.,* 378 Mass. 177, 184 (1979). The same principles, however, were applied to pre-1977 accidents by the *Soule* case, *supra* at 184-185. Under those principles liability does not attach if the "children" are old enough to appreciate the risk in meddling with or coming within the area of the dangerous condition. See Restatement (Sec-

---

[3] The trial judge reported on the record that he had taken "a view with counsel early this morning through swamp and terrain that would stop a lesser man."

[4] The judge did not mention it in his findings, but the parties agree that the injury occurred without actual touching of a wire by Puskey; rather it occurred when a part of his body entered the electrical field. A trained lineman would have known to climb within the enclosure of the tower, and would be equipped with insulating gloves and boots.

ond) of Torts § 339*(c)* and G. L. c. 231, § 85Q*(c)*. As comment c to § 339 elucidates, the status of "child" for purposes of the rule will vary with the nature of the hazard. It may range as high as sixteen or seventeen years of age. *Ibid.* Compare *Ekdahl* v. *Minnesota Util. Co.,* 203 Minn. 374 (1938), and *Klingensmith* v. *Scioto Valley Traction Co.,* 18 Ohio App. 290 (1924), electric shock cases in which the injured parties were fifteen and sixteen, respectively, and categorized as children. Whether a teenager actually appreciated a particular hazard is a question of fact, *Hoff* v. *Natural Ref. Prod. Co.,* 38 N.J. Super. 222, 236 (1955), a question which the trial judge in this case resolved against Puskey.

Among the circumstances which dispose toward imposing liability on a landowner, the Restatement, the statute (i.e., G. L. c. 231, § 85Q), and *Soule* prescribe that the utility to the landowner (here WMEC) of maintaining the dangerous condition and the burden of eliminating the danger be slight as compared with the risk to children involved. Here the judge found that barriers to climbing the remote (i.e., not accessible to vehicles) towers would unreasonably encumber repairs and that the signs and education campaign, together with publicity surrounding the 1971 accident, had diminished the risk. Finally, the judge found that WMEC had exercised reasonable care to eliminate the danger. Upon analysis, the plaintiff's appeal reduces to a quarrel with the judge's resolution of the critical facts. That resolution, as we have said, is supportable, and we do not disturb it.

It was not necessary for the judge to rule on the plaintiff's request for rulings of law. The judge's memorandum of findings and decision fulfilled the requirements of Mass.R.Civ.P. 52(a). See *Geraci* v. *Crown Chevrolet, Inc.,* 15 Mass. App. Ct. 935, 937 (1983).

*Judgment affirmed.*

*W. Stanley Cooke* for the plaintiffs.
*Frederick M. Myers* for the defendant.