ALI JAD, administrator,[1] *vs.* BOSTON & MAINE CORPORATION.

No. 87-883.

Middlesex. June 8, 1988. — November 16, 1988.

Present: PERRETTA, CUTTER, & SMITH, JJ.

*Negligence*, Railroad, One owning or controlling real estate, Trespasser, Child Trespasser. *Child Trespasser. Statute*, Repeal, Construction. *Constitutional Law*, Equal protection of laws.

This court, without deciding that G. L. c. 231, § 85Q, the so-called "child-trespasser" statute, applied to the Boston & Maine Corporation (B & M) as the occupier-lessee rather than the owner of land whereon a fourteen year old trespasser was struck and killed by a commuter train operated by B & M, held that B & M's exemption from liability under G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 2 (providing that a "person operating a railroad shall not be liable for negligence in causing the death of a person while walking or being upon such railroad contrary to law"), was not affected by the later enactment of G. L. c. 231, § 85Q. [566-571]

CIVIL ACTION commenced in the Superior Court Department on March 22, 1984.

Motions for summary judgment were heard by *Andrew Gill Meyer*, J.

*David A. Barry* (*Paul E. White* with him) for the plaintiff.

*John J. Bonistalli* for the defendant.

*Jonathan P. Feltner*, for Massachusetts Bay Transportation Authority, was present but did not argue.

PERRETTA, J. There are railroad tracks which run parallel with the back campus of the Belmont High School (the school). The tracks are leased by the defendant Boston & Maine Corporation (B & M) from the defendant Massachusetts Bay Transportation Authority (MBTA). On the morning of December 6,

---

[1] Of the estate of Mudhar Jad.

1982, the plaintiff's fourteen year old son was walking along the tracks on his way to the school when he was hit by a commuter train operated by the B & M. The plaintiff brought an action in negligence against the defendants seeking damages for his son's wrongful death. The judge allowed the B & M's motion for summary judgment under that portion of G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 2, which provides that a "person operating a railroad shall not be liable for negligence in causing the death of a person while walking or being upon such railroad contrary to law . . . ."[2] Because the B & M was an occupier rather than the owner of the land, the judge also concluded that G. L. c. 231, § 85Q, the so-called "child-trespasser" statute, was inapplicable to the B & M.[3] On appeal the plaintiff argues: (1) that § 85Q applies to an occupier in possession and control of land; and (2) that disputed questions of material fact exist concerning the B & M's liability under § 85Q. On the undisputed facts, we conclude that the B & M's exemption from liability under c. 229, § 2, is not affected by c. 231, § 85Q, and we affirm the judgment.

I. *The Undisputed Facts.*

Many students who lived on the northerly side of the tracks would cross them at or near the point of the accident on their way to and from the school. This route enabled students to avoid an indirect, longer walk (by some fifteen minutes) to

---

[2] The judge also allowed summary judgment for all the defendants on those counts based upon allegations of wilful, wanton, and reckless conduct. The plaintiff makes no argument on appeal relative to the judgments against him on those counts. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 919 (1975).

[3] The MBTA and the town of Belmont were also named as defendants in the complaint. The judge denied the MBTA's motion for summary judgment on other counts alleging negligence. The plaintiff's complaint has not been reproduced in its entirety in the record appendix. It appears from the judge's memorandum of decision that the MBTA remains in the case because it was not the operator of the train and, therefore, not exempt from liability under G. L. c. 229, § 2, and because he concluded that there are disputed material facts concerning its liability under G. L. c. 231, § 85Q. The MBTA did not attempt to appeal the denial of its motion, but, because the plaintiff argues that the railroad exemption set out in c. 229, § 2, has been impliedly repealed by the enactment of c. 231, § 85Q, the MBTA has joined in the B & M's brief as amicus curiae.

the nearest appropriate crossing. There was nothing on the northerly side of the tracks to block pedestrian access. There was, however, a wire mesh fence on the southerly side on the school's property line. That fence was the only obstacle to students taking the short-cut over the tracks. There were "no trespassing" signs posted along the fence; the fence, however, was continually cut, presumably by students, so that the access route across the tracks could be maintained.

School personnel issued frequent warnings to students about the dangers inherent in crossing the tracks behind the school campus. These warnings were given at the commencement of each school year and thereafter at least monthly, if not more often, because of complaints to the school from the B & M, the Belmont police, and neighbors on Channing Road.

Channing Road runs parallel to the tracks on their northerly side. The plaintiff and his family had lived behind the school on Channing Road since August 14, 1982. There is nothing in the materials before us to indicate whether the decedent in fact had heard these warnings, or had seen the posted signs, or how frequently he might have crossed the tracks prior to the tragedy. We learn from the plaintiff's answers to interrogatories that his son had used the short-cut on December 3, 1982, a Friday. His sister learned of that fact because she left school before him, and they arrived home at the same time. The sister warned the decedent not to take the short-cut again or she would tell their father. The decedent was killed the following Monday morning.[4]

II. *Liability Under G. L. c. 231, § 85Q.*

There is no dispute that the decedent was a trespasser. See G. L. c. 160, § 218. Under Massachusetts law, a landowner is not liable to an adult trespasser for injuries resulting from the landowner's conduct unless such conduct is wilful, wanton, or reckless, or unless the landowner is aware that the trespasser is trapped in a position of peril. *Pridgen* v. *Boston Housing Authy.*, 364 Mass. 696, 713 (1974); *Schofield* v. *Merrill*,

---

[4] As there is no question of wilful, wanton, or reckless conduct before us, we need not describe the circumstances of the decedent's death.

386 Mass. 244, 245-246, 252 (1982). An exception to the rule exists as matter of common law, see *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177, 184 (1979), and by statute, see c. 231, § 85Q,[5] as inserted by St. 1977, c. 259, where the trespasser is a child. The common law and statutory exception are coextensive, each embodying the "rule of § 339 of the Restatement (Second) of Torts [1965]."[6] *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. at 184. See also *McDonald* v. *Consolidated Rail Corp.*, 399 Mass. 25, 29 (1987); *Puskey* v. *Western Mass. Elec. Co.*, 21 Mass. App. Ct. 972, 973 (1986). The plaintiff argues that the child-trespasser statute is here applicable and presents disputed questions of fact similar, if not identical, to those which worked to defeat the MBTA's motion for summary judgment. See note 3, *supra*.

---

[5] This section reads in full: "Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (*a*) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (*b*) the condition is one of which the land owner knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, (*c*) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (*d*) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (*e*) the land owner fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

[6] Section 339 reads in full: "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

As earlier noted, the judge concluded that c. 231, § 85Q, was applicable to the landowner (the MBTA) but not to an occupier of the land, the B & M. The plaintiff makes a persuasive argument that the wording of § 85Q ("his own land" and the "land owner") should be construed to include an occupier in possession and control of the land. See Restatement, *supra* § 328E[7] and § 339. The materials before us, however, do not lend themselves to a determination, as matter of law or fact, of the extent or degree of control over the land by the B & M. But any deficiency in the record makes no difference in the result we reach because it does not rest upon a determination of whether the B & M is an occupier in possession and control. For purposes of our decision, we will assume without deciding that c. 231, § 85Q, does apply to the B & M.

Turning to c. 231, § 85Q, we focus upon the fifth conjunctive condition of liability, (*e*), which is identical to that set out in the Restatement, *supra* 339(e), but for the words "land owner," and which provides that a landowner will be subject to liability where, in addition to those circumstances described in (*a*) through (*d*), the landowner "fails to exercise *reasonable care* to eliminate the danger or otherwise to protect the children" (emphasis supplied). The liability established by the statute and the common law is liability for negligence. See *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. at 182 ("[T]here is a common law duty of reasonable care by a landowner or occupier to prevent harm to foreseeable child trespassers"). See also Restatement, *supra* § 339, comment o ("The liability covered by this Section is liability for negligence . . . . If the possessor has exercised all reasonable care to make the condition safe, or otherwise to protect the children, and has still not succeeded,

---

[7] Section 339 speaks to a "possessor of land." That term is defined in § 328E as:

"(a) a person who is in occupation of the land with intent to control it or
(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

there is no liability"). However, whether the B & M was negligent is immaterial unless we conclude that in enacting c. 231, § 85Q, the Legislature impliedly repealed that portion of c. 229, § 2, which exempts a railroad operator from liability for negligence.

"Although the principle [of implied repeal] is one which the court, in deference to the Legislature, does not regard with favor and applies with caution, it has its proper place in judicial construction of legislative enactments. It derives from the basic concept that it is the duty of the court to ascertain the legislative intent and to effectuate it. The test of the applicability of the principle of implied repeal is whether the prior statute [c. 229, § 2] is so repugnant to and inconsistent with the later enactment [c. 231, § 85Q] covering the subject matter that both cannot stand." *Doherty* v. *Commissioner of Admn.*, 349 Mass. 687, 690 (1965). We think that *Owen* v. *Meserve*, 381 Mass. 273 (1980), disposes of any notion of repugnancy or inconsistency in respect to the relationship between these two statutes.

In that case a fifteen year old boy was killed by a train in 1971. It was argued that, in limiting a railroad's liability under c. 229, § 2, the Legislature had made an arbitrary (hence, unconstitutional) distinction between those trespassers who are injured and those who are killed. The argument was predicated upon an assumption that an injured child trespasser had a common law cause of action in 1971, even though the plaintiff did not contend that there was evidence of wilful, wanton, or reckless conduct. Assuming without deciding that the plaintiff's predicate was correct, the court noted the 1979 adoption of a common law cause of action and stated: "[W]e do not think our decision in the *Soule* case, adopting a more modern view of common law liability to child trespassers, rendered invalid a contrary statutory rule that retained some rational force."[8] *Owen* v. *Meserve*, 381 Mass. at 276.

---

[8] That rational force is: "[T]he Legislature, in fixing the rules for recovery against a railroad for the death of a trespasser, balanced the goal of an effective transportation system against the danger of death to trespassers, taking into account the degree of culpability of the railroad and the opportunity of the trespasser to avoid the hazard. The balance was struck differ-

If the common law rule of liability adopted in *Soule* is not repugnant to or inconsistent with the railroad operator's exemption from liability for negligence under c. 229, § 2, we do not think that it logically can be concluded that c. 231, § 85Q, is. The "common law rule . . . is indistinguishable in its elements from the statute or from its twin, § 339 of the Restatement (Second) of Torts." *McDonald* v. *Consolidated Rail Corp.*, 399 Mass. at 29. Consistent with the "rational force" of the exemption in c. 229, § 2, discussed in *Owen* v. *Meserve*, 381 Mass. at 277, other jurisdictions have held that liability against a railroad under § 339 of the Restatement, *supra*, is precluded as matter of law by reason of paragraph (d) of that section. See *Nolley* v. *Chicago, Milwaukee, St. Paul & Pac. R.R.*, 183 F.2d 566, 570 (8th Cir. 1950); *Edwards* v. *Consolidated Rail Corp.*, 567 F. Supp. 1087, 1109-1112 (D. D.C. 1983); *Joslin* v. *Southern Pac. Co.*, 189 Cal. App. 2d 382, 387-388 (1961); *Holland* v. *Baltimore & Ohio R.R.*, 431 A.2d 597, 603 n.11 (D.C. 1981); *Dugan* v. *Pennsylvania R.R.*, 387 Pa. 25, 32 (1956), cert. denied, 353 U.S. 946 (1957). See also Prosser & Keeton, The Law of Torts § 59, at 410-411 (5th ed. 1984). But see *Dickeson* v. *Baltimore & Ohio Chicago Term. R.R.*, 73 Ill. App. 2d 5, 33 (1965).

Moreover, even were we somehow to conclude that the statutes are inconsistent, it would not necessarily follow that c. 231, § 85Q, supersedes the railroad operator's exemption from liability for negligence under c. 229, § 2. "If a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute." *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118 (1973). Although c. 231, § 85Q, was enacted subsequent to the railroad operator's exemption, we do not think it can be viewed as the more specific provision of the two. The exemption set out in c. 229, § 2, provides a limitation upon liability only in narrow

---

ently at different times; sometimes it coincided with the balance struck by our common law decisions on comparable cases of personal injury, sometimes it did not. But we are not prepared to say that the balance provided by the Legislature in 1971 was wholly irrelevant to the achievement of any legitimate governmental objective." *Owen* v. *Meserve*, 381 Mass. at 277.

and specific circumstances, namely, where a person operating a railroad negligently causes the death of a person walking or being upon the railroad contrary to law. On the other hand, the child-trespasser statute applies to any artificial condition, to any landowner, and to any physical harm. In only one respect could the child-trespasser statute be deemed more specific or narrow than the exemption: the former has application only to children, whereas the latter is applicable to all persons. We do not think this fact sufficient to require the exemption to yield. Moreover, we see nothing in the language of c. 231, § 85Q, which indicates a clear legislative intent to preclude recognition of the limited exemption in c. 229, § 2, as a reasonable exception to the general rule of liability for negligence to child-trespassers. See *Owen* v. *Meserve*, 381 Mass. at 276-277. Compare *Mirageas* v. *Massachusetts Bay Transp. Authy.*, 391 Mass. 815, 818-819 (1984) (plain language of statutory amendment establishing doctrine of comparative negligence made it necessary to imply repeal of G. L. c. 161A, § 21, which made MBTA liable to nonpassengers only if they were in the exercise of due care when injured).

III. *Conclusion.*

It follows from what we have said that, as it is undisputed that the B & M was the operator of the railroad upon which the plaintiff's son was walking, the judgment dismissing the complaint against the B & M is affirmed.

*So ordered.*