Grasso, J.
Plaintiff Scott Leger (hereinafter “Leger”) sued the defendant Bemis Company, Inc. (“Bemis”) in tort for injuries allegedly sustained when Leger fell into a vat of glue or caustic adhesive material at Bemis’s manufacturing facility on September 25, 1988. The parties agree that at the time of the incident Leger was trespassing. They disagree whether Leger should be deemed a child trespasser to whom a duty of reasonable care is owed under G.L.c. 231, §85Q and the common law. If Leger is not deemed a child trespasser, the parties agree that the duty owed would be to refrain from willful, wanton, and reckless conduct. Plaintiffs counsel conceded at oral argument that if the latter standard were to apply,-then judgment for defendant would be appropriate.
Bemis has moved for Summary Judgment pursuant to Mass.R.Civ.P. 56, asserting that there is no material fact in dispute and that it is entitled to judgment as a matter of law. For the reasons discussed below. Bemis’s motion is allowed.
BACKGROUND
Careful review of the pleadings and the depositions filed by the parties discloses the undisputed material facts to be as follows:
Leger was born on April 20, 1971. At the time of the accident on September 25, 1988, he was 17 years and 5 months old. Leger was attending Nashoba Valley High School, where he was a senior playing soccer. Prior to the accident, he had worked for his father as a carpenter’s aide; he had used power tools. He had also worked at a printing company, occasionally driving fork lift trucks at the printing company’s plant. ~Leger had a valid Massachusetts driver’s license with no restrictions.
On the night of the accident Leger recalls consuming two to three beers at a friend’s house. Subsequent to the accident he was found to have a blood alcohol level of. 15. After spending approximately four hours at his friend’s house, Leger operated his car and travelled to Bemis’s manufacturing facility in Pepperell in the company of two friends, Bruce Noble and John Mortimer. Bemis is in the business of manufacturing and selling paper bags.
Leger stopped at Bemis’s plant because he and Noble had been inside the plant before, and Mortimer had not. They wanted to show Mortimer what it was like inside. Along with other teens, Leger and Noble had been inside the plant on a number of prior occasions — even when the plant was in operation. The youths would play inside, consume beer and other beverages and eat snacks, leaving their refuse behind within the premises. On occasion, they would drive the fork lift trucks around inside the plant, leaving them in locations different from where they were originally situated. Noble had even taken a set of keys from one of the fork lift trucks, placing them on his key chain to facilitate using the truck later.
Upon approaching Bemis’s plant sometime after midnight, Leger observed a parking lot with a big spotlight on and a chain link fence approximately eight feet high secured by a chain and padlock. There were no holes in the fence, but Leger and his friends were able to walk through the fence by pulling the gate poles with their hands at the location where the gates were chained together. This left enough room for each of them to pass through.
Upon going through the fence Leger realized that he was trespassing upon Bemis’s property. However, he was intent upon entering the building for the purposes stated. He walked toward the plant and attempted to open a door, but could not do so because the plant was locked. He observed several small windows, some with broken panes of glass. About three feet up on the exterior wall of the plant that was a larger window that was missing its glass. Leger told his friends that he would jump up into the window and enter the plant to see if he could find another way to open the door to the plant.
*263 Leger jumped through the window opening and saw what he described as a “window of light” in the otherwise darkened building. He started to walk toward the light. After taking a step or two, he felt himself sliding. He slid into a vat of hot glue or lye that was at or near ground level. After extricating himself, he removed his clothes and left the premises. His injuries apparently followed from the effects of the caustic material upon his legs.
Subsequently, Leger was charged in a criminal (not juvenile) complaint with Breaking and Entering in the Nighttime with intent to commit a felony (G.L.c. 266, § 16). In December of 1988, he admitted sufficient facts in Ayer District Court and the matter was continued without a finding for a period of six months.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The central issue for decision is whether Scott Leger is a child trespasser within the meaning of G.L.c. 231, §85 Q, the “child trespasser” statute. At common law, a landowner’s duty toward a child trespasser was identical to that owed to an adult trespasser — to refrain from willful, wanton, or reckless conduct, unless the landowner knew that the trespasser was imperiled. Mathis v. Massachusetts Electric Co., 409 Mass. 256, 260, (1991); Soule v. Massachusetts Electric Co., 378 Mass. 177, 180, (1979); Pridgen v. Boston Housing Authority, 364 Mass. 696, 707 (1974). In 1977 the Legislature enacted G.L.c. 231, §85Q to ameliorate the harsh effects of the common law rule upon child plaintiffs. Mathis, supra, at 260; Soule, supra, at 180. The child trespasser statute provides that a landowner owes a duty of reasonable care to certain foreseeable child trespassers. Mathis, supra, at 261; Schofield v. Merrill, 386 Mass. 244, 247, (1982).
Borrowing its language from the Restatement (Second) of Torts §339, G.L.c. 231, §85Q provides:
Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (a) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (b) the condition is one of which the land owner knows or has reason to know and which he realized or should realize will involve an unreasonable risk of death or serious bodily harm to such children, (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (d) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the land owner fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.
In any case brought under the statute, a landowner’s duty of reasonable care toward a foreseeable child trespasser arises only if all five conditions of the statute are satisfied. Mathis, supra, at 262. Briggs v. Taylor, 397 Mass. 1010, 1011 (1986). Leger is not a child trespasser as he fails to satisfy two of the statutory conditions. He is not a child who “because of (his) youth (did) not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it” [condition (c)]; nor is the condition one “of which the landowner knows or has reason know to and ... (realizes or should realize) will involve an unreasonable risk . . .” [condition (b)].
The requirement of G.L. 231, §85Q(c)
The duty of reasonable care owed by a landowner to a child trespasser is applicable only where a person would fail to appreciate his peril because of his youth. McDonald v. Consolidated Rail Corp., 399 Mass. 25, 29 (1987). The test under both the statute and the common law rule of Soule are identical: “no duty of reasonable care is owed to foreseeable child trespassers unless they are shown to have been persons who ‘because of their youth do not discover the condition or realize the risk involved.’ ” McDonald, supra, at 29.
If the child is fully aware of the condition, understands the risk which it carries, and is quite able to avoid it, he stands in no better position than an adult with similar knowledge and understanding. Mathis, supra at 262. As comment (i) to the Restatement (Second) of Torts, §339 notes:
[The duty) does not extend to those conditions the existence of which is obvious even to children and *264 the risk of which should be fully realized by them ... [it does not impose liability upon possessors of land] maintaining on the land the normal, necessary and usual implements which are essential to its normal use, but which reckless children can use to their harm in a spirit of bravado or to gratify some other childish desire and with as full a perception of the risks which they are running as though they were adults.
Leger was fully aware that Bemis’s manufacturing facility was locked and darkened. He realized generally that there are risks involved in breaking into such locations. Whether the risk be a guard dog, a wet floor, a piece of machineiy over which he might trip, or a vat of glue is of no moment. He was also fully able to avoid the condition. His failure to observe the vat of glue or realize every possible risk had nothing to do with his age, but rather with the surreptitious nature of the activity in which he was engaged.
Nothing in Puskey v. Western Massachusetts Electric Company, 21 Mass.App.Ct. 972, 974 (1986), is to the contrary. While Puskey holds that whether a teenager actually appreciated a particular hazard is a factual inquiry that varies with the nature of the hazard, here ' the hazard was obvious. Leger need not foresee every particular kind of harm that might befall him. His age, education and work experience were sufficient as a matter of law for him to be aware of the risks inherent in his conduct. That Leger was deemed an adult for purposes of the criminal law is not alone determinative of whether he could discover the condition or realize the risk involved in breaking into Bemis’s facility, but it is relevant to that determination.
The requirement of G.L.c. 231, §85Q(b)
An additional reason why Leger’s action must fail is that the duty under consideration extends only to foreseeable child trespassers. The law circumscribes the duty of care within the bounds of foreseeability of the risk. The courts have been particularly reluctant to find a duty to take precautions against possible criminal activity. See Dhimos v. Cormier, 400 Mass. 504, 509 (1987). Unless the criminal act is foreseeable in the sense of imposing a direct obligation on the defendant, as in a “dram shop" case (where there is a duty to refrain from serving alcohol to visibly intoxicated patrons of a tavern), there is no duty to prevent it. Thus, if an injury derives from criminal conduct, it is less likely that the risk will be foreseeable, removing the linchpin for the imposition of a duty.
In the instant case, Leger was involved in an escapade in which he was charged as an adult. When a child engages in an adult activity, courts will frequently treat the child as an adult and hold the child to the standard of care for an adult. Restatement (Second) Torts, §283A, comment c. “The statute . . . imposes a duty upon landowners to foresee and circumvent the risk of childish activity, not pathological activity. The statute should not be read to make a possessor of land the insurer of a pathological teenager who happens to find the accident he is so desperately seeking during a trespass on that land.” Gaines v. General Motors Corp., 789 F.Supp. 38, at 41 (D.Mass. 1991) (no duty of care owed by corporation which owned or controlled automobile to 16½ year old boy killed when automobile which he had stolen crashed during police chase).
The statutory duty is to foresee certain instances of criminal trespass. Other types of criminal activity are so beyond the pale of foreseeability as to compel a finding of no duty. Both the majority and concurring opinions in Soule note the difference in degree between the technical child trespasser which the statute and common law sought to protect and the “classical ‘poacher’ or outlaw who invades, perhaps even by breaking a fence or climbing a wall, the private land of another.” Soule, supra at 186. Leger is clearly more the latter than the former. He both broke the fence and climbed the wall.
This court is of the view that the Supreme Judicial Court would not extend a duly of care to Leger. Although the question was left open in Soule, the reasoning is clear. “The difference between a child, lawfully playing in a public place, who is injured when ‘trespassing’ on (properly) belonging to another, and a burglar, who after unlawfully invading another’s private property is hurt by some condition found thereon, seems sufficiently great to make it inappropriate to comment on the legal implications of the latter type of case until we are presented with the necessity of making a decision thereon.” Soule, supra, at 186. (See also, the concurring opinion of Kaplan, J. which would deny recovery to a robber, not for the reason that the common law called him a “trespasser," but for “good and sufficient functional reasons that appeal to common sense.”)
Measured against the statutory standard, there is no “condition” regarding the vat of glue used in manufacturing its paper bags which Bemis “should have realized would have involved an unreasonable risk.” The sort of criminality engaged in by Leger was not foreseeable — notwithstanding the relocated fork lift trucks and debris left by teenagers previously.
In sum, Bemis is not liable to Leger because it does not owe him a duty. The condition was not one which Leger failed to appreciate because of his youth. Neither was the kind of conduct engaged in foreseeable in the sense of imposing upon Bemis a direct obligation to do more to protect individuals such as Leger from falling into a vat of glue inside a locked and darkened facility surrounded by an eight-foot-high fence that was chained and padlocked.
ORDER
Based on the foregoing, it is hereby ORDERED that defendant’s motion for summary judgment be ALLOWED.